1    Christine M. Tobin-Presser, WSBA #27628      HONORABLE CHRISTOPHER M. ALSTON
     BUSH KORNFELD LLP

2    601 Union Street, Suite 5000      **HEARING DATE: June 4, 2025**
     Seattle, WA 98101      **HEARING TIME: 11:00 a.m.**

3    Tel: (206) 292-2110      **RESPONSE DUE: May 28, 2025**
     Email: ctobin@bskd.com      **LOCATION:    Seattle, Courtroom 7206**

4

5

6

7           UNITED STATES BANKRUPTCY COURT
          WESTERN DISTRICT OF WASHINGTON

8    In re          Chapter 7

9    CRAIG CLINTON ROMINGER and HEIDI KAY    No. 24-11790-CMA
     ROMINGER,

10

            Debtors.

11

   JONATHAN ROBERTS, an individual,

12            Plaintiff,      Adversary Case No. 24-01085-CMA

13    v.      PLAINTIFF'S MOTION FOR SUMMARY
     JUDGMENT

14    CRAIG CLINTON ROMINGER and HEIDI KAY
     ROMINGER,

15

16            Defendants.

17

18      Jonathan Roberts ("Roberts"), plaintiff in the above-captioned adversary proceeding (the

19    "Discharge Revocation Action"), moves the Court for an order granting summary judgment for his

20    claim for revocation of discharge pursuant to § 727(d)(1) on the basis that Craig Clinton Rominger

21    ("Craig") and Heidi Kay Rominger ("Heidi") (each, a "Debtor," and together, the "Debtors") obtained

22    their bankruptcy discharge through fraud, and that Roberts did not know of the fraud until after the

23    fraudulently obtained discharge was granted. This motion is based upon the files and records herein

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT –
Page 1

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

id23kb01th

and the accompanying Declarations of Jonathan Roberts, Christine M. Tobin-Presser, Dominique Scalia and Carl Grether.

## I.     INTRODUCTION

The Debtors' multiple serious and knowing false oaths in the bankruptcy filings, standing alone, serve as independent bases for the revocation of their discharge. The context in which they filed their bankruptcy case, including the events before, during, and after the bankruptcy, confirm that the Debtors' false oaths were motivated by a desire to retain assets for themselves while relieving themselves of any liabilities relating to those assets.

The Debtors filed their bankruptcy in the middle of an active and litigious receivership case with respect to Glacia, Inc. ("Glacia"), an entity the Debtors had controlled, and which had taken in a substantial amount of third-party investor funds, including from Roberts. At the time the Debtors filed their bankruptcy, the Glacia receiver had issued two reports evidencing that potential claims may exist against the Debtors, personally, based upon hundreds of thousands of dollars they had directly and indirectly received from Glacia and which they had characterized as reimbursements, without providing substantiation. The Debtors were repeatedly made aware of and did not disclose the potential claims against them when they filed their bankruptcy.

In the two years leading up to the Debtors' bankruptcy filing, the Debtors repeatedly made allegations that numerous Glacia investors, including Roberts, and even the Glacia receiver, had colluded together in an attempt to steal his and Glacia's intellectual property. The Debtors did not schedule these claims as assets, nor did they schedule the $607,499 for which Craig had submitted proofs of claim in the Glacia receivership. In fact, the Debtors' bankruptcy filing was entirely silent on anything relating to Glacia, including their majority stock ownership, their respective Glacia officer positions or the remaining retainer in the possession of their Glacia-related attorney.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT –
Page 2

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

id23kb01th

Disclosure of any of these facts would certainly have led the Chapter 7 trustee to inquire further. After remaining silent and/or falsely testifying about these issues at their 341 meeting and after the trustee issued a notice of no distribution, the Debtors amended their schedules to include the potential Glacia-related claims against them, without providing any notice of the bankruptcy to these claimants. The Debtors thus received their discharge and their bankruptcy case was closed.

Six months after closure of the Debtors' bankruptcy, Craig has filed three actions in Snohomish County Superior Court, seeking millions of dollars in damages for the Debtors based upon the same prepetition claims they failed to schedule. Craig has threatened further lawsuits against former Glacia investors, also based upon prepetition events.

For the reasons set forth herein, Roberts requests that the Court enter summary judgment revoking the Debtors' discharge.

## II.     FACTS

### A.     <u>Events Before, During and After the Bankruptcy Relating to Glacia</u>

#### 1.     <u>Glacia and the Debtors' Relationship to Glacia</u>

Glacia, Inc. ("<u>Glacia</u>") was formed in 2019 as a Minnesota corporation and converted to a Delaware corporation on June 9, 2021. Roberts Decl., Ex. 1. Craig was the CEO and Heidi the Secretary of Glacia. Roberts Decl., Exs. 1 and 2. As of April 21, 2023, the Debtors represented that they held over 74% of Glacia's common stock. Roberts Decl., Ex. 53. The Debtors assert that they ceased to hold any stock in Glacia as of July 3, 2024, the date they assert that Glacia, Inc. was dissolved. Roberts Decl., Ex. 4 at ¶ 3. The Debtors have provided no evidence that Glacia was dissolved as a Delaware corporation on July 3, 2024, pursuant to 8 Del. C. § 275[1] or that the Debtors ceased to hold stock in Glacia, dissolved or not.

---

[1] Delaware law provides that a company is dissolved by filing a certificate of dissolution.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT – Page 3

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

**2.** __Third-Party Investment in Glacia__

From April 2021 through February, 2022, Roberts invested $325,000 in Glacia, Inc. ("Glacia"). Roberts Decl. During the same time period, numerous other individuals, many of whom Roberts directly and indirectly introduced to Craig, also invested substantial additional funds, including Douglas Backous, who invested $50,000. Ultimately, Roberts and other third parties provided over $1,000,000 to Glacia in investment funds. Roberts Decl., Exs. 3 and 6.

**3.** __Commencement and Expansion of the Receivership__

On December 19, 2022, Roberts filed a Petition for Appointment of General Receiver Pursuant to RCW 7.60.025 (the "Receivership Petition") with the Snohomish County Superior Court (the "Receivership Court"), Case No. 22-2-07724-31 (the "Receivership Action"). Roberts Decl., Ex. 7. In connection with the Receivership Petition, Roberts filed a Motion for Appointment of General Receiver Pursuant to RCW 7.60.025. Roberts Decl., Ex. 8. The Petition was expressly supported by numerous Glacia investors, including Backous, as well as Chad Goodwin ("Goodwin"), whom Craig had engaged to act as Glacia's president. Roberts Decl., Ex. 9. The asserted bases of the Receivership Action were that Craig had manifested an intention to transfer revenue producing assets away from Glacia, Glacia was insolvent, and Craig had failed and refused to provide an accounting of Glacia's use of investor funds. Roberts Decl., Exs.7 and 8.

Craig caused Glacia to oppose the Receivership on numerous bases, including that Glacia's intellectual property was highly valuable and thus, Glacia was not insolvent. In a supporting declaration, Craig further made unsubstantiated assertions that Roberts, Goodwin, and all of the Glacia-investors that supported the Receivership Petition, including Backous, had been and were colluding in an attempt to steal Glacia's intellectual property ("Rominger January 2023 Declaration"). *See, e.g.* Roberts Decl., Ex. 10 at ¶19. This was a claim that Craig had previously asserted against

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT – Page 4

Bush Kornfeld llp
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

id23kb01th

Goodwin and Roberts in May 2022 in an arbitration action that he later withdrew (the "May 2022 Arbitration Complaint").  Roberts Decl. at ¶ 13 and Ex. 11.

On March 2, 2023, the Receivership Court entered an Order on Revision in which it found, among other things, that "[t]he evidence in the records shows that [Craig] Rominger planned to transfer at least one asset of Glacia (the intellectual property) to a separate entity.  This action would have harmed Glacia's investors."  Roberts Decl., Ex. 12 at ¶ 4.  On May 5, 2023, the Receivership Court entered an Amended Order Appointing Receiver for Specified Purposes, pursuant to which it appointed Dominique Scalia as the receiver (the "Receiver") to (a) protect Glacia's assets from wrongful or fraudulent transfer and (b) conduct a valuation of Glacia's assets.  Roberts Decl., Ex. 13.  The Receiver was not granted access to or control of Glacia's bank accounts or funds and thus, such control remained with Glacia through at least December 2023.  *Id.*

**4.**     **Potential Claims Against the Debtors are Explicitly Identified.**

As part of the specified purposes for which she was initially appointed, the Receiver issued three interim reports with respect to her review of Glacia's books and records and the valuation of Glacia's assets.  The Receiver issued her Second Interim Report on August 4, 2023.  Roberts Decl., Ex. 14.  The Second Interim Report described, among other things, that the Receiver had not been provided the full court-ordered access to Glacia's books and records.  *Id.* at at 2:6-5:17.  The Receiver further noted that the limited QuickBooks records she had been provided reflected $303,224.33 in alleged reimbursements from Glacia to Craig, the majority of which the Receiver had been unable to substantiate.  Roberts Decl., Ex. 14 at 11:8-12:11.  The purported expense reimbursement report included payments by Glacia of apparent Debtor family personal expenses, including orthodontist expenses, retail expenditures including Lululemon, Nordstrom and Dillards, and high-end pet food purchases.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT –
Page 5

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

id23kb01th

1  Upon learning of the unsubstantiated reimbursements, Roberts filed a Motion to Compel

2  Glacia/Rominger to Comply with Order Appointing Receiver and Confirming Receiver's Subpoena

3  Authority ("Motion to Compel") with the State Court. Roberts Decl., Ex. 15. Roberts emphasized

4  that "[c]laims for improper reimbursement and/or distribution are assets of the company

5  [Glacia] to be included in the valuation." *Id.* at 3:20-21.

6  Thus, as of at least August 9, 2023, the Debtors were aware of potential claims against them

7  for any misuse of company funds for their personal benefit.

8  **5.  Roberts Obtains Protection Order Against Craig.**

9  On August 15, 2023, due to disturbing and escalating behavior by Craig targeting Roberts

10  directly following issuance of the Receiver's Second Report, Roberts sought a Protection Order

11  against Craig in King County Superior Court, Case No. 23-2-15262-02 SEA (the "Roberts Protection

12  Order Action"). Roberts Decl. Among the numerous substantiated bases for Roberts' petition was an

13  anonymous threatening email sent to Roberts, his wife, and his daughter, directly after the Receiver

14  had issued her Second Interim Report in the Glacia Receivership. Roberts Decl., Ex. 18. The

15  anonymous email among other, more disturbing, things [2] accused Roberts of intellectual property theft

16  – an accusation that only Debtor has ever made, and which he has made repeatedly. The anonymous

17  emailer asserted claims against Roberts:

18  Jonathan Roberts we know who you are, and we know what you have done.

19  A nationwide movement is forming that is going to target pieces of sh-- like you that
20  have stolen the lives and inventions of others. You greedy f------ b------, this is your
   final f------ warning to straighten up and fly right, or else.

21

22  ───────────────
   [2] The more disturbing aspects of the email that caused Roberts to seek a protection order were its
   unhinged statements accusing Roberts of acts of pedophilia with his daughter, the violent tone in which the
23  author directed an exceedingly crude epithet to his wife and the fact that the email was sent directly to Roberts'
   family members.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

id23kb01th

Roberts Decl., Ex. 18 (offensive text redacted from original).

On August 18, 2023, the court issued a Temporary Protection Order in favor of Roberts and against Debtor. Roberts Decl., Ex. 16. On October 5, 2023, after notice and a hearing, the court entered a final Protection Order in favor of Roberts and against Debtor, finding on the evidence that it was more likely than not that Craig had sent the email.[3] Roberts Decl., Ex. 17.

**6.     Expansion of Receiver's Role to that of General Receiver**

In November 2023, after the two valuation experts engaged by the Receiver issued their reports confirming that Glacia's intellectual property had nominal (if any) value and thus, Glacia was insolvent, Roberts moved for the expansion of the Receiver's role to that of a general receiver. Roberts Decl., Ex. 19. Roberts' motion to expand the receivership was expressly supported by most of Glacia's non-Rominger investors through declarations. Roberts Decl., Ex. 20.

In objecting to the expansion motion, on November 16, 2023, both Craig and Heidi executed declarations making accusations of collusion, tortious interference, and intellectual property theft by Roberts, Goodwin and other Glacia investors, and of collusion by the Receiver.[4] Roberts Decl., Exs 51 at 3-6 and 10 (emphasis added) and 52.

On December 12, 2023, the State Court entered an Order Expanding Role of Receiver to General Receiver Pursuant to RCW § 7.60.025. Roberts Decl., Ex. 21.

///

///

---

[3] Rominger had also unsuccessfully attempted to obtain a protection order against Roberts, asserting that he needed protection from Roberts lying, intimidating and maligning Craig's character in court documents filed in the Receivership Action. The court found no basis for the order. Ex. 22 (Petition at ¶ 17).

[4] Throughout the Receiver's appointment, Rominger repeatedly accused the Receiver of colluding with Roberts. *See, e.g.,* Roberts Decl., Ex. 23 at 3:18-5:2 and Ex. 24 at 1:16-4:13.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT –
Page 7

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

id23kb01th

**7. Pivotal Report Again Puts Debtors on Notice of Potential Claims Against Them.**

On December 22, 2023, upon the motion of the Receiver, the State Court approved the Receiver's employment of Pivotal Services ("Pivotal") to, among other things, "review Glacia's financial records to determine whether the estate holds any valuable claims related to the company's prior transactions." Roberts Decl., Exs. 25 and 55. From January 2024 to September 2024, Pivotal conducted a review of Glacia's financial records and prepared a report with respect thereto (the "Pivotal Report"). Roberts Decl., Ex. 26.

Among other things, the Pivotal Report describes that both of the Debtors directly and indirectly received hundreds of thousands of dollars from Glacia and provided insufficient documentation to confirm that they were entitled to reimbursement. For example, the Debtors received net transfers of $88,017.98[5] from Glacia's checking account, of which $30,810.03 went to Heidi's personal account and $57,207.96 went to Craig's personal account. Roberts Decl., Ex. 26 at 7 (emphasis added). Likewise, the Pivotal Report describes that Heidi made adjusting journal entries to Glacia's quickbooks, characterizing $232,589.86 in payments made on the Debtors' behalf as "reimbursements," but did not provide sufficient documentation to establish that the Debtors were, in fact, entitled to reimbursement from Glacia. Roberts Decl., Ex. 26 at 11 and 12 (emphasis added).

The Receiver provided the Pivotal Report to both Craig and Heidi at their respective email addresses on September 18, 2024, during the pendency of the Debtors' Bankruptcy. Roberts Decl., Ex. 27. Regardless of whether the Debtors agreed with the content or conclusions of the Pivotal Report, they were made aware, yet again, of potential claims that may be asserted against them by Glacia or its investors.

---

[5] The Pivotal Report indicates that a gross amount of $194,162.24 was transferred from Glacia's checking account to the Debtors' personal accounts.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT –
Page 8

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

id23kb01th

**8.    Craig Submits Two Proofs of Claim in Receivership.**

On or about February 20, 2024, Craig submitted two proofs of claim in the Receivership, in the respective amounts of $503,499 and $104,000, totaling $607,499, and asserting under penalty of perjury that he held claims for unpaid wages and loans made to Glacia from January 1, 2021 to December 12, 2023.  Scalia Decl., Exs. 1 and 2.  The Debtors have denied the $607,499 figure, asserting that Craig only asserted a $499,000 claim.  Roberts Decl., Ex. 18 (Responses to Interrogatory 2 and RFP No. 8).  Either way, the Debtors acknowledge that Craig asserted a substantial claim against Glacia.

On August 20, 2024, one day after the 341 Meeting in his Bankruptcy Case, Craig filed a pleading in State Court seeking removal of the Receiver and reiterating his personal claims against Glacia:

> Rominger has both **a potential monetary interest in sale proceeds**, and an interest in [Glacia's] succession . . .
>
> Rominger **is a creditor** of the [Receivership] estate.  The higher the purchase price of [Glacia] assets, the more likely Rominger is to receive sale proceeds (this is also true for other creditors).  **Rominger, along with the other creditors** not named Roberts, have an interest in transparent and competitive bidding, overseen by a neutral. (Emphasis added).

Roberts Decl., Ex. 29 at 9:15-23 (emphasis added).

**9.    Roberts Makes Clear He is Purchasing Any Glacia Claims Against Debtors.**

Unaware of the Debtors' personal bankruptcy case, the Receiver was proceeding with a liquidation of Glacia's assets.  Also unaware of the Debtors' bankruptcy, Roberts made a credit bid offer to the Receiver to purchase all assets of Glacia pursuant to the terms of an Asset Purchase Agreement (the "APA") which specifically included "[a]ll rights and **claims held by Glacia against any third parties** and all underlying documents associated therewith."  Ex. 30 at APA § 1.01(l).

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT – Page 9

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

id23kb01th

(Emphasis added). Roberts has repeatedly made clear that he believed and believes that Glacia holds substantial claims against the Debtors for misappropriation of funds.

On August 23, 2024, the Receiver filed a motion for approval of Roberts' credit bid and bid procedures which included a copy of the APA and provided the Debtors with a copy thereof. Roberts Decl., Ex. 31. On September 3, 2024, Roberts filed a pleading with the Receivership Court, highlighting that claims against third parties' for misappropriation of Glacia's funds were part of the asset package on which he was bidding:

> The sources and uses of a business' funds are part of standard business information provided to interested purchasers in connection with their due diligence. **The Report may also provide information that would underlie claims against third parties for misappropriation of funds**, which claims are also being sold by the Receiver.

Roberts Decl., Ex. 32 at 2:1-8 (emphasis added). This pleading was served on the Debtors through counsel and, whether or not the Debtors agreed that they had misappropriated funds, they were aware that such claims had been asserted and that Roberts intended to acquire any such claims. Roberts Decl., Ex. 33.

No other offers aside from Roberts' were ultimately received and on October 8, 2024, the State Court entered an Order Granting Motion to Verify Bid Results, authorizing and directing the Receiver to complete the sale of assets to Roberts. Roberts Decl., Ex. 34. The Receiver completed the sale and Roberts holds all claims previously held by Glacia against third parties. Roberts purchased the claims with the intent of bringing any legally appropriate claims against the Debtors for misappropriation of funds. Roberts Decl.

### 10. Post-Bankruptcy Discharge Activity by Craig

On October 21, 2024, the Debtors received their bankruptcy discharge and their Bankruptcy Case was closed. Roberts Decl., Ex. 35. On December 30, 2024, Roberts filed a Complaint Seeking

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT –
Page 10

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

id23kb01th

Revocation of the Debtors' Discharge Pursuant to 11 U.S.C. § 727(d)(1).  Since then, the following activities have occurred:

        **a.**    ***Craig Asks State Court to Halt Revocation Discharge Action.***  On April 2, 2025, Craig filed a *pro se* Petition for Protection Order in Snohomish County Superior Court (the "<u>Protection Order Court</u>"), seeking to stop Roberts from proceeding with what Craig characterizes as "abusive litigation.[6]"  Roberts Decl., Ex. 36 (Petition at § 13).  The two instances of purportedly abusive litigation cited by Craig in his protection order petition are the Receivership Action and the Discharge Revocation Action.  Roberts Decl., Ex. 36, Declaration of Craig at § II.4.  Roberts filed a response pointing out that trial in the Discharge Revocation Action is set for July 10, 2025 and Craig is simply seeking an end-run around the Bankruptcy Court's jurisdiction.  Ex. 37.  The matter was set for hearing on April 16, 2025 but Craig requested that the hearing be continued to May 14, 2025.  Tobin-Presser Decl., Ex. 1.

        **b.**    ***Craig Continues to Assert Pre-Bankruptcy Claims Against Roberts.***  Although Craig's current action against Roberts is a protection order action, his submission to the Protection Order Court asserts that he holds tort claims against Roberts for "harassment, malicious prosecution [and] defamation" based upon events occurring long prior to the Bankruptcy Case, and asks the Protection Order Court to award him $117,845.26 in attorneys fees incurred beginning in 2022.  Tobin-Presser Decl., Ex. 2[7] (multiple references to personal tort claims Craig asserts he holds against Roberts).

---

[6] Craig's petition also purports to seek a restraint against harm, contact and stalking behavior as well as a surrender of weapons by Roberts, notwithstanding that Roberts does not and has never owned any weapons and has had no contact with either of the Debtors (and has never met their children) for over 2.5 years, with the single exception of required email service of his own protection order against Craig.  Roberts Decl. at Ex. 36 (Petition at § 13); Ex. 37.

[7] *See* second consecutive document in exhibit, labeled "Response to Motion in Opposition to Petition for Protection Order" at pages 6, 7 and 8 asserting multiple personal tort claims against Roberts.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT – Page 11

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

id23kb01th

1           *c.*      ***Craig Threatens Former Glacia Investors.***   In providing Roberts'

2 counsel a copy of his protection order submission, Craig also included an April 15, 2025 letter that he

3 had evidently sent to John Dowdell, one of the Glacia investors that had supported the Receivership

4 Action.   Tobin-Presser Decl., Ex. 2 (first two pages of exhibit).   In the letter, Craig cites the case

5 number for the protection order action, implying that the case is a sweeping lawsuit alleging civil

6 claims against Roberts.   *Id.*   Craig threatens to bring claims against Mr. Dowdell for civil conspiracy,

7 aiding and abetting fraudulent legal actions, tortious interference with business relationships,

8 malicious prosecution, and abuse of process relating to his prior support for the Receivership Action if

9 Mr. Dowdell does not take steps to "distance himself" from Roberts.   *Id.*   Similar letters were sent to

10 other Glacia investors that supported the Receivership Action.   Grether Decl., Ex. A.

11           *d.*      ***Craig Files Lawsuit Against Backous for Pre-Bankruptcy Events.***   On

12 April 18, 2025, Craig commenced a *pro se* lawsuit in his name against Backous in Snohomish County

13 Superior Court alleging civil conspiracy, fraud and trade secret misappropriation by Backous relating

14 to Glacia and seeking over $10,000,000 in compensatory and punitive damages (the "<u>Post-Bankruptcy</u>

15 <u>Rominger-Backous Action</u>").   Roberts Decl., Ex. 38.   The lawsuit involves the same unsubstantiated

16 allegations that Rominger has been asserting since at least January 2023. Roberts Decl., Ex. 10 at

17 ¶ 19.

18           *e.*      ***Craig Files Lawsuit Against Goodwin for Pre-Bankruptcy Events.***   On

19 April 18, 2025 Craig commenced a *pro se* lawsuit in his name against Goodwin in Snohomish County

20 Superior Court alleging civil conspiracy, fraud and trade secret misappropriation by Goodwin relating

21 to Glacia and seeking over $10,000,000 in compensatory and punitive damages (the "<u>Post-Bankruptcy</u>

22

23

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT –
Page 12

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

id23kb01th

Rominger-Goodwin Action").[8] Roberts Decl., Ex. 39. The lawsuit includes the same unsubstantiated allegations that Rominger has been asserting beginning in May 2022. Roberts Decl., Ex. 11.

     ***f. Craig Files Lawsuit Against Pivotal Relating to Pivotal Report.*** On April 25, 2025, Craig commenced a *pro se* lawsuit against Pivotal and its principal, Alicia Thomas, in Snohomish County Superior Court, seeking compensatory damages "including but not limited to loss of value as a shareholder of Glacia, Inc.[9], slander, defamation, reputational harm, and consequential financial losses," punitive damages and other relief for what he characterizes as Pivotal's preparation of a "false and unsupported accounting report." Roberts Decl., Ex. 54. Craig also seeks to enjoin Roberts' counsel from referring to the Pivotal Report in any way, including in this adversary proceeding.

**B. <u>Specific Fraud by Debtors in Obtaining Their Discharge</u>**

  On July 18, 2024 (the "<u>Petition Date</u>"), at a time when the Receivership Action in which both Debtors were actively participating had already been pending for 16 months, the Debtors filed their Chapter 7 bankruptcy (the "<u>Bankruptcy Case</u>"). Roberts Decl., Ex. 35.

  The Debtors are both financially sophisticated and capable of understanding the disclosures required by the bankruptcy schedules (each, a "<u>Schedule</u>") and statement of financial affairs (the "<u>SOFA</u>"). Heidi is a certified public account, employed or previously employed by the global firm of Anderson. Roberts Decl., Ex. 40. In a declaration filed in the Receivership Action, Craig described himself as "extremely proficient at analyzing financial data and assessing the corporate financial health," and having an "expertise in finance and accounting." Roberts Decl., Ex. 10 at ¶ 5.

---

[8] The 2025 Rominger-Roberts Action, the 2025 Rominger-Backous Action, and 2025 Rominger-Goodwin Action are referred to herein collectively as the 2025 Rominger Snohomish County Actions.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

id23kb01th

The knowing misrepresentations and omissions by the Debtors precluded the chapter 7 trustee and creditors from inquiring about the possible assets that the Debtors are now seeking to monetize for themselves and precluded creditors from challenging the dischargeability of their debts.

1. **Initially Filed Schedules and SOFA Omit Any Reference to Glacia.**

The Schedules and SOFA initially filed by the Debtors (Roberts Decl., Ex. 41) are devoid of any reference to Glacia or any Glacia-related asset or obligation and contain the following false representations and omissions:

a. ***Nondisclosure of Glacia Stock Ownership.*** In response to Schedule A/B 19, the Debtors represented that they held no stock in any corporation when, in fact, they held over 74% of the common stock in Glacia. Roberts Decl., Ex. 41. As discussed in Section II.A.1 *supra*, there is no evidence supporting an assertion that the Debtors were divested of their stock at any time.

b. ***Nondisclosure of Retainer Held by Personal Attorney in Glacia Receivership.*** On December 30, 2023, the Debtors provided a legal retainer of $10,000 to the firm of Tomlinson Bomsztyk Russ ("Tomlinson") to represent them,[10] personally, in the Receivership Action. Roberts Decl., Ex. 42. Monthly payments were made to Tomlinson from the retainer deposit and, as of the Petition Date, $585 of the retainer remained, but was not disclosed on Schedule B. Roberts Decl., Ex. 43. While the amount is nominal, the omission is part of the Debtors' pattern of omitting any Glacia-related information.

c. ***Nondisclosure of Millions of Dolllars in Asserted Claims.*** In response to Schedule A/B 33 (Roberts Decl., Ex. 41), the Debtors represented that they held no claims against third parties, notwithstanding the following:

---

[10] While the Tomlinson engagement letter is directed to Craig, Heidi represented to the Receiver that Tomlinson is also her attorney. Scalia Decl., Ex. 3.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT –
Page 14

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

id23kb01th

1      • In February 2023, Craig submitted $607,499 in claims against Glacia under

2      penalty of perjury in the Receivership Action (the "Receivership Claims"),

3      which was still pending.  Scalia Decl., Exs. 1 and 2; Roberts Decl. Ex. 28.

4      • Since 2022, Craig has repeatedly and continuously asserted that he personally

5      holds claims against Roberts for colluding to steal his intellectual property and

6      maligning his character and continues to seek compensation relating to these

7      allegations post-Bankruptcy for the sole benefit of the Debtors.  Roberts Decl.,

8      Ex. 11, Ex. 36; Tobin-Presser Decl., Ex. 3.

9      • Since at least January 2023, Craig has been asserting that Glacia-investor Doug

10     Backous colluded to steal the intellectual property that Craig claims to have

11     invented and has filed the Post-Bankruptcy Backous Action seeking

12     $10,000,000 in damages for the sole benefit of the Debtors.  Roberts Decl.,

13     Exs. 10 and 38.

14     • Since at least May 2022, Craig has asserted that Goodwin engaged in trade

15     secret theft and conspiracy with respect to intellectual property he claims to

16     have invented and filed the Post-Bankruptcy Goodwin Action seeking

17     $10,000,000 in damages for the sole benefit of the Debtors.  Roberts Decl.,

18     Exs. 10, 11 and 39.

19     • Craig has recently sent letters to former Glacia investors that supported the

20     Receivership Action, asserting he holds and may bring claims against them for

21     events arising prior to the Bankruptcy.

22         ***d.***    ***Non-Disclosure of Glacia-Related Creditors.***  Despite the fact that the

23  Receivership Action was then pending, the Debtors did not initially schedule the Receiver, Glacia or

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT –
Page 15

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

id23kb01th

any Glacia investors as potential disputed creditors on Schedule F, notwithstanding their knowledge that Pivotal was investigating potentially improper distributions to the Debtors and that they had repeatedly been made aware that any improper distributions would be claims held by Glacia. Roberts Decl., Ex. 41. These Glacia-related entities were ultimately added to the Schedule E/F after the 341 meeting, once the danger of trustee inquiry had passed.

        **e.**     ***Nondisclosure of Protection Order Action***. The Debtors did not disclose the Roberts Protection Order Action in response to SOFA No. 9, notwithstanding that it is an action to which Craig was a party in the year before the Petition Date. Roberts Decl., Ex. 17 and 41.

        **f.**     ***Nondisclosure of Glacia Officer Positions.*** SOFA No. 27 required the Debtors to disclose any corporation as to which either of the Debtors was an officer, director or managing executive within four years prior to the Bankruptcy Case. Roberts Decl., Ex. 41. While they did identify one company in which Heidi had had involvement, Craig and Heidi failed to disclose Glacia or the respective CEO and Secretary positions they held with Glacia within the four years prior to the Bankruptcy Case.[11] The Debtors assert that Craig ceased working for Glacia in 2023 and that Heidi verbally tendered her resignation to Craig in December 2023. Ex. 28. That is irrelevant as the SOFA specifies a four-year lookback period.

        **g.**     ***Nondisclosure of Glacia Stock Ownership.*** SOFA No. 27 required the Debtors to disclose any corporation as to which they had been an owner of at least 5% of the voting securities within four years prior to the Bankruptcy. The Debtors failed to disclose that they held over 74%[12] of Glacia's common stock within four years prior to the Bankruptcy.

---

[11] The Minnesota Secretary of State website reflects that Heidi was Glacia's CEO when it was initially formed. Roberts Decl., Ex. 5.

[12] A declaration filed by Heidi in the Receivership Action makes clear that she views Craig's stock as the Debtors' community property. Roberts Decl., Ex. 51 at 1:20-23. Roberts notes that Heidi's declaration

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT – Page 16

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

id23kb01th

**2.  Glacia-Related Creditors Receive No Notice of Bankruptcy.**

On July 21, 2024, the Bankruptcy Court mailed the Notice of Chapter 7 Bankruptcy Case to only those creditors that had been scheduled by the Debtors, which did not include anyone with any connection to Glacia.  Roberts Decl., Ex. 44.  The notice included the October 18, 2024 deadline for filing complaints objecting to the Debtors' discharge and/or to the dischargeability of certain debts (the "Discharge Objection Deadline").  *Id.*

**3.  Both Debtors Make Knowingly False Statements at 341 Meeting.**

On August 19, 2024, the Debtors appeared virtually and testified under oath at the Section 341 Meeting of Creditors (the "341 Meeting").  Attached as Exhibit 45 to the Roberts Declaration is a true copy of the transcript of the 341 Meeting.

- The Debtors each explicitly testified that the information in their bankruptcy filing was true and correct.  Roberts Decl., Ex. 45 at 3:22-4:10.

- The Debtors each explicitly testified that they had listed all debts in their bankruptcy schedules.  Roberts Decl., Ex. 45 at 4:11-14.

- The Debtors explicitly each testified that they do not hold claims against anyone and that no one owes them any money.  Roberts Decl., Ex. 45 at 9:15.  The **very next day** Craig asserted in the Receivership Action that he was a significant creditor of Glacia.  Roberts Decl., Ex. 29 at 9:11-23.

**4.  Debtors' Strategically Timed Schedule Amendment Furthered Their Fraud.**

*a.  Belated Scheduling of Glacia-Related Creditors With No Notice.*  On August 23, 2024, the Chapter 7 trustee issued his Report of No Distribution.  Roberts Decl., Ex. 35.

---

refers to a total of 71% rather than the 74% identified in Ex. 3.  Nonetheless, 71% is still a majority of Glacia's common stock.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT –
Page 17

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

id23kb01th

On September 7, 2024, the Debtors amended their Schedule E/F to include Glacia, the Receiver's law firm, and all Glacia investors that had supported the Receivership Action as disputed potential creditors. Roberts Decl., Ex. 46.[13] Rather than scheduling Roberts, personally, as a disputed creditor, the Debtors scheduled Roberts' company, RPrime Foundation, to Schedule F, care of Roberts and his wife, at 401 E. Madison St. #**200**. *Id.* Roberts Decl. RPrime's business address is 401 E. Madison St., #**210-B**. Roberts Decl., Ex. 47.

In short, the Debtors belatedly identified Glacia, the Receiver and all Glacia investors that had supported the Receivership as potential disputed creditors in order to discharge the claims. The Debtors did not provide any notice of the Bankruptcy Case or the discharge objection deadline to the Receiver, Glacia, Roberts or any other newly added Glacia-related disputed potential creditors.

      ***b.***     ***Incomplete Disclosure Regarding Debtors' Connection to Glacia.*** Also on September 7, 2024, the Debtors amended SOFA 27 to identify Glacia as an entity as to which they had an officer connection within four years prior to the Bankruptcy. Roberts Decl., Ex. 48. However, the Debtors continued to omit their majority ownership interest in Glacia that they had unquestionably held within four years prior to the Bankruptcy, minimizing the likelihood of any further inquiry. *Id.*

## C.   <u>Discharge is Issued and Case is Closed Three Days Later With No Notice to Roberts</u>.

On October 21, 2024, a discharge was granted to the Debtors under 11 U.S.C. § 727. Docket No. 17. Roberts Decl., Ex. 35. On October 23, 2024, notice of the discharge was mailed to creditors, including the Glacia-related creditors that had received no other notice of the Bankruptcy Case. Roberts Decl., Ex. 49. One day later, on October 24, 2024, the Bankruptcy Case was closed.

---

[13] These include Bruce Montgomery, Carl Grether, David and Kelly Baugh, Doug Backous, Fred Brown, John Dowdell, Melissa Mulholland and Kirsten Johnson. *See* Roberts Decl., Exs. 3, 6, 9 and 20.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT –
Page 18

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

id23kb01th

Roberts did not receive the notice of discharge from the Bankruptcy Court, presumably because it was sent to the incorrect RPrime Foundation address scheduled by the Debtors. Roberts Decl. Roberts first heard of the Bankruptcy Case from two separate Glacia-related investors that had received the notice of discharge, after the Bankruptcy Case had been closed. *Id.* On November 13, 2024, in connection with the Receiver's transfer of Glacia's assets to Roberts, the Receiver provided Roberts with a copy of the notice of discharge she had received. Roberts Decl., Ex. 50. The Receiver confirmed that she may have taken action in the Bankruptcy had she received any other notice. *Id.*; Scalia Decl.

### III.  LEGAL ARGUMENT

#### A.  <u>Summary Judgment Standard</u>

Summary judgment is appropriate if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The evidence, and all reasonable inferences therefrom, must be viewed in the light most favorable to the non-moving party. <u>Id</u>.

Without question, revocation of a debtor's discharge is an extraordinary remedy. *In re Yates*, 2009 Banrk. LEXIS 4465 at *48 (Bankr. S.D. Cal. 2009). Nonetheless, the fresh start afforded by bankruptcy is reserved for the innocent but unfortunate debtor. *Id.* Bankruptcy Code § 727(d)(1) provides that the bankruptcy court shall revoke a debtor's discharge if it was obtained through fraud and that the requesting party did not know of the fraud until after the discharge had been granted. *Id.* Revocation is proper where the debtor "made false oaths that would have caused the bankruptcy court to deny the discharge under Section 727(a) had the fraud been known." *Jones v. U.S. Trustee*, 736 F.3d 897, 900 (9th Cir. 2013). Bankruptcy Code 727(a)(4)(A) provides for denial of discharge where the debtor "knowingly and fraudulently, in or in connection with the case . . . made a false oath or

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

id23kb01th

account." To prevail on a claim under § 727(a)(4)(A), a plaintiff must show by a preponderance of evidence that "(1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently." *In re Reitz*, 606 F.3d 1189, 1197 quoting *In re Roberts*, 331 B.R. 876, 882 (9th Cir. BAP. 2005).

**B.   The Debtors Made False Oaths That Would Have Caused a Denial of Discharge.**

    **1.   The Debtors Made Numerous False Oaths.**

The Debtors' numerous false oaths, include:

- failing to disclose their ownership of 74% of Glacia's stock;

- failing to disclose the retainer held by their Glacia-related personal attorney;

- failing to disclose as potential asset the claims against Glacia that Craig was simultaneously asserting as valuable in the Receivership Action;

- failing to disclose as an asset the claims against Goodwin and other Glacia-related investors as to which Craig has sent threatening letters and has filed lawsuits seeking $20,000,000 in compensation to the Debtors post-bankruptcy;

- failing to disclose, even as disputed creditors, the Glacia-related entities whom they knew may assert claims against them until after the 341 meeting and the trustee's issuance of a report of no distribution, notwithstanding that they had been made aware throughout the Receivership Action that such claims would likely be asserted;

- failing to disclose their connections to Glacia within the past four years including their CEO and Secretary positions and stock ownership; and

- falsely testifying at their 341 meeting regarding the foregoing.

    **2.   The False Oaths Were Material.**

As to materiality, the Ninth Circuit Bankruptcy Appellate Panel has stated that

[a] fact is material if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property. A false statement or omission may be material even if creditors do not suffer direct financial prejudice from it. An omission or misstatement is material if it "detrimentally affects administration of the estate." More specifically, if the omission or misstatement "adversely affects the trustee's or creditors'

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT –
Page 20

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

id23kb01th

ability to discover other assets or to fully investigate the debtor's pre-bankruptcy dealing and financial condition," then the omission or misstatement may be considered material.

In re Clark, 2016 Bankr. LEXIS 984 at *31 (9th Cir. BAP 2016) (internal citations omitted).

Here, the Debtors omitted any piece of information relevant to Glacia, an entity that has, by their own account, dramatically impacted their own financial position. Roberts Decl., Ex. 36 (Petition) at Declaration § V (Meritless Lawsuits). The trustee was unable to independently investigate the viability of the millions of dollars of claims that are now being asserted by Craig for the benefit of the Debtors. Roberts Decl., Exs. 36, 38 and 39; Grether Decl., Ex. A; Tobin-Presser Decl., Ex. 2. The Debtors gave no notice of the Bankruptcy to the Receiver in the Receivership Action in which they were actively involved. Glacia-related individuals and entities were unable to evaluate the dischargeability of their initially omitted "potential disputed claim[s]," given that the Debtors failed to give them any notice of the Bankruptcy.

### 3. The Debtors' False Oaths Were Made Knowingly and Fraudulently.

A debtor acts knowingly if he or she acts deliberately and consciously." *In re Roberts*, 331 B.R. 876, 883 (9th Cir. BAP 2005). Fraudulent intent is present when "(1) the debtor makes a misrepresentation; (2) that at the time he or she knew was false; and (3) with the intention and purpose of deceiving creditors" and is "typically proven by circumstantial evidence or by inferences drawn from the debtor's conduct." In re Clark, 2016 Bankr. LEXIS 984 at *33 (9th Cir. BAP 2016). A pattern of falsity and a debtor's reckless indifference or disregard for the truth may establish fraudulent intent. *Id.* citing *In re Wills*, 243 B.R. 58, 64 (9th Cir. BAP 1999).

Documents executed by the Debtors, reflect that the Debtors knew that they held a majority of the stock in Glacia within the four years prior to the Bankruptcy. Roberts Decl., Ex. 51 at 2:20-23.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT –
Page 21

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

id23kb01th

1  Documents executed by the Debtors reflect that they knew they had held officer positions in

2  Glacia within the four years prior to the Bankruptcy Case. While they belatedly amended their SOFA

3  to reflect their prior officer status with Glacia, they chose to continue to omit their majority stock

4  ownership within the four-year lookback period.

5  Craig knew he had filed proofs of claim in the pending Receivership Action. The day after the

6  Debtors' 341 meeting at which they testified they held no claims against anyone, Tomlinson filed a

7  pleading in the Receivership asserting that the claim was potentially valuable.

8  Documents executed by the Debtors reflect that the Debtors had long asserted the existence of

9  claims against numerous Glacia-related investors, including Roberts. *See, e.g.* Roberts Decl., Ex. 10

10 at ¶¶ 11, 19, 20, 54; Ex. 11, Ex. 51 at 3:16-23, 4:10-19 and 6:3-9; Scalia Decl., Ex. 3. Craig has

11 resumed asserting the claims, seeking millions of dollars in compensation for the benefit of the

12 Debtors. Roberts Decl., Exs. 36, 38 and 39. *See also*, Grether Decl., Ex. A, Tobin-Presser Decl., Ex.

13 2 (2-page letter to John Dowdell).

14 Documents provided to both of the Debtors prior to and during their Bankruptcy Case reflect

15 that the Debtors knew that claims may be asserted against them based upon their handling of Glacia's

16 funds. Roberts Decl., Ex. 14 at 11:8-12:11; Ex. 15 at 3:20-23; Ex. 26, Ex. 30 at 1.01(l) and Ex. 32 at

17 3:15-18. This knowledge is further established by the fact that they belatedly scheduled those

18 individuals and entities after the 341 meeting and after the Chapter 7 trustee had issued a no

19 distribution report.

20 The Debtors filed their Bankruptcy in the midst of the Receivership Action that they were

21 continuing to hotly contest and in which serious questions regarding their use of Glacia's funds had

22 been raised. The context in which the Debtors filed their Bankruptcy makes clear that the Debtors

23 knowingly, and with fraudulent intent, executed their Schedules and SOFA omitting any reference to

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT –
Page 22

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

id23kb01th

Glacia in their Bankruptcy and falsely disclaimed any of the facts that would have established their connection with Glacia at their 341 meeting. The Debtors amended their schedules after the 341 meeting and after the chapter 7 trustee had issued a report of no distribution, notwithstanding that they had at all times been in possession of the information underlying the amendments. In short, the Debtor's pattern of falsity leaves no question as to their fraudulent intent.

**C.** **Roberts Was Unaware of Bankruptcy Filing Until After Bankruptcy Was Closed.**

The undisputed evidence reflects that first and only notice Roberts received of the Bankruptcy came from the Receiver on November 13, 2024, after the Bankruptcy had already been closed.

**IV.  CONCLUSION**

Based upon the foregoing, Roberts respectfully requests that the Court grant summary judgment in his favor, and revoke the Debtors' discharge pursuant to 11 U.S.C. § 727(d)(1).

DATED this 30th day of April, 2025.

BUSH KORNFELD LLP

By____/s/ Christine M. Tobin-Presser_____
   Christine M. Tobin-Presser, WSBA #27628
   Attorneys for Jonathan Roberts

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

id23kb01th

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON

In re                                                          Chapter 7

CRAIG CLINTON ROMINGER and HEIDI KAY                          No. 24-11790-CMA
ROMINGER,

                              Debtors.

_____

JONATHAN ROBERTS, an individual,

                                                              Adversary Case No. 24-01085-CMA
                              Plaintiff,

                                                              [PROPOSED] ORDER GRANTING
v.                                                            PLAINTIFF'S MOTION FOR SUMMARY
                                                              JUDGMENT
CRAIG CLINTON ROMINGER and HEIDI KAY
ROMINGER,

                              Defendants.

_____

     This matter came before the Court upon Plaintiff's Motion for Summary Judgment (the

"Motion") filed by Jonathan Roberts ("Roberts"), plaintiff herein.  The Court has reviewed the files

and records herein, including the Motion and the supporting Declarations of Jonathan Roberts,

Christine M. Tobin-Presser, Carl Grether and Dominique Scalia, and the responsive and reply

[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT– Page 1

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

id30j1017r

pleadings filed by the parties. The Court finds that, after viewing the facts in the light most favorable to the Craig Clinton Rominger and Heidi Kay Rominger (each, a "Debtor," and together, the "Debtors"), Roberts has established by a preponderance of the evidence that grounds exist for the revocation of the Debtors discharge pursuant to 11 U.S.C. § 727(d)(1). Now, therefore, it is hereby

**ORDERED:**

1.       The Motion is granted; and

2.       Judgment shall be entered revoking the Debtors' respective bankruptcy discharges.

//End of Order//

Presented by:

BUSH KORNFELD LLP


By_____
     Christine M. Tobin-Presser, WSBA #27628
Attorneys for Jonathan Roberts

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

id30j1017r