FILED - WAWB
JUL 08 2025 9:49PM
Gina Zadra Walton, Clerk of Court

UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

Before the Honorable Christopher M. Alston, United States Bankruptcy Judge.

| | |
|---|---|
| In RE:<br><br>Craig Clinton Rominger and<br>Heidi Kay Rominger, Debtors<br><br>Jonathan Roberts, an Individual.<br>                      Plaintiff,<br><br>v.<br><br>Craig Clinton Rominger and<br>Heidi Kay Rominger,<br>                      Defendants. | CASE NO: 24-11790-CMA<br><br>Adversary Case: 24-01085-CMA<br><br>DEBTORS' MOTION FOR DETERMINATION OF STANDING AND THRESHOLD VALIDITY OF CLAIM UNDER 11 U.S.C. §§ 727(D), 101(10), AND FRBP 7012(B) |

## I.    INTRODUCTION

1. COME NOW Defendants, Craig Clinton Rominger and Heidi Kay Rominger (collectively, the "Debtors"), hereby move this Honorable Court, pursuant to Federal Rule of Bankruptcy Procedure ("FRBP") 7012(b) (incorporating Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6)), for an Order determining that Plaintiff Jonathan

DEBTORS' MOTION FOR DETERMINATION OF
STANDING AND THRESHOLD VALIDITY OF CLAIM
UNDER 11 U.S.C. §§ 727(D), 101(10), AND FRBP 7012(B)

1

Case 24-01085-CMA   Doc 119   Filed 07/08/25   Ent. 07/09/25 12:15:00   Pg. 1 of 15

Roberts ("Roberts") lacks standing to maintain this adversary proceeding for revocation of discharge under 11 U.S.C. § 727(d)(1).

2. Roberts's Complaint for Revocation of Discharge is fundamentally flawed for two independent, yet interconnected, reasons: (1) Roberts cannot satisfy the express statutory prerequisite of 11 U.S.C. § 727(d)(1) that he "did not know of such fraud until after the granting of such discharge"; and (2) Roberts was not a "creditor" with a "claim" against the Debtors, as defined by 11 U.S.C. § 101(10), at the time of the Debtors' bankruptcy filing with respect to the "vague claims" he now purports to assert. Indeed, Roberts only acquired ownership of these alleged claims months after the Debtors' bankruptcy petition and after their discharge was granted.

3. As set forth herein, Roberts's own actions, his intimate involvement in the Glacia, Inc. ("Glacia") receivership, the publicly available record, and the undisputed timeline of events conclusively demonstrate his lack of standing. Accordingly, Roberts's Complaint must be dismissed with prejudice.

## II. STATEMENT OF FACTS

**A. Roberts Lacks Standing Under 11 U.S.C. § 727(d)(1) Due to Pre-Discharge Knowledge.**

4. To obtain a revocation of discharge under 11 U.S.C. § 727(d)(1), the requesting party bears the burden of proving that "such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge." 11 U.S.C. § 727(d)(1) (emphasis added). This is a strict, non-waivable

2

DEBTORS' MOTION FOR DETERMINATION OF
STANDING AND THRESHOLD VALIDITY OF CLAIM
UNDER 11 U.S.C. §§ 727(D), 101(10), AND FRBP 7012(B)

Case 24-01085-CMA    Doc 119    Filed 07/08/25    Ent. 07/09/25 12:15:00    Pg. 2 of 15

prerequisite for standing. *See, e.g., In re Kontrick*, 295 F.3d 724, 735 (7th Cir. 2002) (stressing the importance of the "did not know" element). The purpose of this provision is to prevent a party from sitting on known facts and then, after discharge, attempting to revoke it.

5. "Knowledge" in this context includes not only actual knowledge but also constructive knowledge – that is, what the plaintiff *should have known* through the exercise of reasonable diligence. *See, e.g., In re Chalasani*, 92 F.3d 1300, 1310 (2d Cir. 1996). Given Roberts's role as the petitioner and an actively involved party in the Glacia receivership, his duty of diligence was exceptionally high.

6. The undisputed facts demonstrate Roberts's actual and/or constructive knowledge of the alleged "fraud" long before the Debtors' discharge:

   i. **Roberts Initiated the Investigation:** Roberts himself initiated the Glacia receivership to investigate the very financial irregularities he now claims as "fraud." His pre-receivership filings confirm his prior concerns and access to information. He cannot now claim ignorance of facts that were the subject of his own pre-bankruptcy inquiry.

   ii. **Pre-Discharge Receiver Reports Provided Ample Notice:** The Receiver's **First** and **Second Interim Reports** issued on June 8, 2023, and August 4, 2023, respectively, provided Roberts with ample notice of the alleged "unsubstantiated reimbursements" and IP issues. These reports were available months before the Debtors' bankruptcy filing and discharge. Roberts's own filings and his counsel's

3

DEBTORS' MOTION FOR DETERMINATION OF
STANDING AND THRESHOLD VALIDITY OF CLAIM
UNDER 11 U.S.C. §§ 727(D), 101(10), AND FRBP 7012(B)

Case 24-01085-CMA    Doc 119    Filed 07/08/25    Ent. 07/09/25 12:15:00    Pg. 3 of 15

statements at the November 20, 2023 hearing confirm his pre-discharge awareness of these specific allegations.

    iii. **Reports Contained Crucial Disclaimers:** The very reports Roberts relies upon to assert "fraud" explicitly contained caveats and disclaimers. In the **Second Interim Report,** the Receiver stated, "Based on documents I have been provided, I am not able to confidently reach any conclusions regarding the existence or non-existence of other fraudulent conveyances of assets by Glacia." (**Exhibit D4**, Page 11, Lines 11-13) The Pivotal Report explicitly disclaimed certainty and completeness, stating its findings were "inexact figures due to missing data or receipt of partial data." (**Exhibit D8**, Page 19, Last Paragraph) Roberts cannot claim to have "discovered" definitive fraud post-discharge from reports that, by their own terms, did not definitively conclude fraud.

    iv. **Fraud was Disproven, Evidence Ignored by Roberts and Counsel:** The Debtors possess, and Roberts knew or should have known of its existence, the **Glacia_$303k Rec_ALL with Exhibits A thru M.pdf (Exhibit D9)** document, which meticulously substantiates the reimbursements Roberts claims were "unsubstantiated." This demonstrates that the alleged "fraud" was not concealed but rather a mischaracterization of transactions for which supporting documentation existed. Roberts's failure to obtain or properly review this documentation before discharge does not create post-discharge "discovery" of fraud.

7. Roberts's assertion that he "did not know of such fraud until after the granting of such discharge" is directly contradicted by the record. He had actual knowledge of the

4

DEBTORS' MOTION FOR DETERMINATION OF
STANDING AND THRESHOLD VALIDITY OF CLAIM
UNDER 11 U.S.C. §§ 727(D), 101(10), AND FRBP 7012(B)

Case 24-01085-CMA    Doc 119    Filed 07/08/25    Ent. 07/09/25 12:15:00    Pg. 4 of 15

underlying facts or, at a minimum, was on notice and failed to exercise reasonable diligence to discover them prior to discharge.

**B. Roberts Lacks Standing as a "Creditor" Under 11 U.S.C. § 101(10).**

8. Beyond the knowledge requirement of § 727(d)(1), Roberts also fundamentally lacks standing because he was not a "creditor" with a "claim" against the Debtors, as defined by the Bankruptcy Code, at the time of the Debtors' bankruptcy filing.

9. 11 U.S.C. § 101(10)(A) defines "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." The "order for relief" in a voluntary Chapter 7 case is the date the petition is filed. *See* 11 U.S.C. § 301(b).

10. **Post-Petition Acquisition of Claims:** The Debtors filed their Chapter 7 petition in **July 2024**. The "vague claims" Roberts now asserts as the basis for his standing were not his personally at that time. Instead, these potential claims belonged to the Glacia estate and were under the exclusive control of the court-appointed Receiver. Roberts only acquired ownership of these specific alleged claims on **November 13, 2024**, when the Asset Purchase Agreement was executed and the Glacia Receivership was terminated. **(Exhibit D18)**

11. **No Pre-Petition Claim:** Roberts cannot retroactively create "creditor" status for himself by acquiring claims post-petition. The Bankruptcy Code is clear: a creditor must hold a claim that arose *at or before* the petition date. Roberts's direct ownership of these "vague claims" arose months after the Debtors' bankruptcy filing and after their discharge. To allow him standing now would undermine the fundamental principles of

DEBTORS' MOTION FOR DETERMINATION OF
STANDING AND THRESHOLD VALIDITY OF CLAIM
UNDER 11 U.S.C. §§ 727(D), 101(10), AND FRBP 7012(B)

5

Case 24-01085-CMA    Doc 119    Filed 07/08/25    Ent. 07/09/25 12:15:00    Pg. 5 of 15

bankruptcy law, which aim to provide a fresh start based on the debtor's financial condition *as of the petition date*.

12. **Policy Against Manufactured Standing:** Permitting a party to acquire claims post-petition and then use them to revoke a discharge would open the door to opportunistic litigation and undermine the finality of discharge. Roberts was an interested party in the receivership, but he was not a direct creditor of the Romingers with respect to these specific claims at the relevant time for standing purposes under § 727(d)(1).

13. Roberts's attempt to assert standing based on claims he acquired *after* the Debtors' bankruptcy filing and discharge is a procedural impossibility and an abuse of the bankruptcy process.

**C. Roberts's Ulterior Motives and Lack of Credibility Further Undermine His Claim's Threshold Validity.**

14. While Roberts's lack of standing is dispositive, his underlying motivations and conduct further demonstrate the lack of threshold validity of his Complaint and the need for its dismissal.

15. **Aggressive Litigation Tactics and Personal Vendetta:** Roberts's choice to pursue a broad § 727 discharge revocation, rather than a more targeted § 523 non-dischargeability action for a specific debt, is an exceptionally aggressive tactic, particularly in a "no asset" Chapter 7 case. This choice, which aims to strip the Debtors of their entire discharge, underscores a personal vendetta rather than a genuine pursuit of newly discovered fraud for the benefit of creditors.

6

DEBTORS' MOTION FOR DETERMINATION OF
STANDING AND THRESHOLD VALIDITY OF CLAIM
UNDER 11 U.S.C. §§ 727(D), 101(10), AND FRBP 7012(B)

Case 24-01085-CMA    Doc 119    Filed 07/08/25    Ent. 07/09/25 12:15:00    Pg. 6 of 15

16. **Compromised Independence of the Receiver:** Roberts's direct financial relationship with the Receiver, including his obligation to pay and actual payment of substantial receivership expenses, significantly compromises the Receiver's perceived independence. Roberts's reliance on reports from a Receiver he funded, and whose findings were consistently disqualified or inconclusive regarding fraud, further highlights the dubious nature of his "fraud" allegations.

17. **Roberts's Bad Faith and Procedural Impropriety in Discovery:** Roberts's lack of standing and the dubious nature of his claims are further underscored by his counsel's demonstrated bad faith and procedural impropriety in the discovery process, particularly concerning the meet and confer obligations under FRCP 26(a)(1). This conduct is directly relevant to Roberts's credibility and the true motivations behind this adversary proceeding.

   i. **The Debtors' Diligent Meet and Confer Efforts:** On **Saturday, June 21, 2025, at 8:57 AM PDT**, Debtors' counsel initiated a good-faith meet and confer via email with Plaintiff's counsel, Ms. Christy Tobin-Presser, regarding Plaintiff's initial disclosures under FRCP 26(a)(1). The Debtors specifically sought clarification on the "computation of each category of damages claimed" (which was marked "N/A"), the factual injury Roberts claimed to have suffered, and the specific relief sought. (See Email from Craig Rominger to Christy Tobin-Presser, dated June 21, 2025, 8:57 AM, attached as **Exhibit D20**).

   ii. **Roberts's Evasive and Insufficient Response:** On the same day, **Saturday, June 21, 2025, at 11:07 AM PDT**, Roberts response through counsel, stated, "Damages are not an element of a claim under 11 U.S.C. 727(d)(1) and thus,

DEBTORS' MOTION FOR DETERMINATION OF
STANDING AND THRESHOLD VALIDITY OF CLAIM
UNDER 11 U.S.C. §§ 727(D), 101(10), AND FRBP 7012(B)

7

Case 24-01085-CMA    Doc 119    Filed 07/08/25    Ent. 07/09/25 12:15:00    Pg. 7 of 15

Plaintiff does not intend to claim damages as part of the action." **(Exhibit D20).** This response, while technically accurate regarding the *element* of damages in a § 727(d)(1) claim, was **evasive and insufficient** to address the Debtors' legitimate inquiries regarding the factual basis of Roberts's alleged injury, his personal legal interest, and how any alleged misrepresentation affected him, all of which are critical to establishing **Article III standing** and the materiality of any alleged false oath.

    iii. **The Debtors' Clear Ultimatum and Notice of Court Inquiry:** Recognizing the evasiveness and the need for clarity to prepare a meaningful defense and plan discovery, Debtors' counsel responded later that day, **Saturday, June 21, 2025, at 7:01 PM PDT**. This email reiterated the need for clarification on the specific false statements, the injury suffered, and the relief sought. Crucially, the Debtors explicitly stated: "If I do not hear back by June 25, 2025, I may need to seek further guidance from the Court on how to proceed." **(Exhibit D20, Page 1)**. This provided clear notice of the Debtors' intent to involve the Court if the meet and confer process remained unproductive.

    iv. **Roberts's Preemptive Strike and Violation of Meet and Confer:** Despite the Debtors' explicit deadline of June 25, 2025, and the stated intent to seek court guidance if a satisfactory response was not received, Plaintiff Roberts filed his **Motion in Limine to Preclude Testimony or Exhibits Not Relevant to Adversary Proceeding Issues (ECF 107) on June 24, 2025 – one day before the Debtors' stated deadline** for a response and before the Debtors had an opportunity to seek court intervention regarding the discovery dispute. This

8

DEBTORS' MOTION FOR DETERMINATION OF
STANDING AND THRESHOLD VALIDITY OF CLAIM
UNDER 11 U.S.C. §§ 727(D), 101(10), AND FRBP 7012(B)

Case 24-01085-CMA    Doc 119    Filed 07/08/25    Ent. 07/09/25 12:15:00    Pg. 8 of 15

action constitutes a clear violation of the spirit, if not the letter, of the meet and confer process. It demonstrates Roberts's counsel's intent to preemptively shut down avenues of defense and avoid providing necessary discovery, rather than engaging in a good-faith resolution of the disclosure issues.

    v. **Implications for Good Faith and Credibility:** This timeline of events strongly suggests that Roberts is operating in bad faith, attempting to litigate by ambush rather than through cooperative discovery. Their refusal to provide basic information regarding the factual basis of Roberts's alleged injury, followed by a preemptive motion to exclude evidence, paints a picture of a party more interested in obfuscation and tactical advantage than in a fair and transparent adjudication of the issues. This conduct is highly relevant to Roberts's credibility as a plaintiff and further undermines the legitimacy of his Complaint for Revocation of Discharge.

18. **Roberts's Own Admissions of Animosity:** Roberts's explicit statements during the November 20, 2023 hearing – "Mr. and Mrs. Rominger took the money, and that doesn't sit well with me" (**Exhibit D16**, Page 15-16 Timestamp 14:22:12-14:22:25) and "I'm going to finish this... it is going to be free of Mr. Rominger" (**Exhibit D16**, Page 17 Timestamp 14:24:19-14:24:30) (**11.20.23.roberts.vs.glacia_Verbatim Report.pdf**, (**Exhibit D16)** are direct evidence of his personal animosity and an agenda to remove the Debtors from any involvement with Glacia. This is not the detached pursuit of justice by a legitimately harmed creditor, but a malicious attempt to destroy the Debtors' fresh start.

9

DEBTORS' MOTION FOR DETERMINATION OF
STANDING AND THRESHOLD VALIDITY OF CLAIM
UNDER 11 U.S.C. §§ 727(D), 101(10), AND FRBP 7012(B)

Case 24-01085-CMA    Doc 119    Filed 07/08/25    Ent. 07/09/25 12:15:00    Pg. 9 of 15

19. **Predatory Conduct and Asset Acquisition:** Roberts's alleged prior predatory behavior concerning Glacia's intellectual property and his post-lapse acquisition of the "SeraKul" trademark further demonstrate his personal agenda and intent to harm the Debtors' reputation, rather than a dispassionate discovery of fraud.

20. The cumulative effect of Roberts's pre-discharge knowledge, his post-petition acquisition of claims, and his documented personal animosity establishes that he lacks standing and that his Complaint is without threshold validity.

## III. LEGAL ARGUMENT

21. **The Glacia Receivership and Roberts's Central Role:** On March 27, 2023, well over a year prior to the Debtors' Chapter 7 petition, Roberts initiated and procured the appointment of a Receiver for Glacia, Inc. in state court. (See, e.g., **Original Order Appointing Receiver for Specified Purposes**, March 27, 2023, **Exhibit D1**).

22. **Roberts's Pre-Existing Knowledge and Allegations:** As the petitioner, Roberts was an active and informed participant in the receivership. His own filings in the state court, including his **Reply of Jonathan Roberts in Support of Motion for Appointment of General Receiver (Exhibit D19)** *(dated January 11, 2023)* and his **Declaration in Support of Motion to Appoint General Receiver (Exhibit D13)** *(dated January 10, 2023)*, explicitly detailed his concerns regarding Glacia's solvency, alleged failure to account for investor funds, and risks to assets due to alleged mismanagement – all *before* the receivership even commenced. This demonstrates his pre-existing knowledge of the very issues he now frames as "fraud" discovered post-discharge.

10

DEBTORS' MOTION FOR DETERMINATION OF
STANDING AND THRESHOLD VALIDITY OF CLAIM
UNDER 11 U.S.C. §§ 727(D), 101(10), AND FRBP 7012(B)

Case 24-01085-CMA    Doc 119    Filed 07/08/25    Ent. 07/09/25 12:15:00    Pg. 10 of 15

23. **The Debtors' Bankruptcy Filing and Discharge:** The Debtors filed their Chapter 7 bankruptcy petition in July 2024. Their discharge was subsequently granted.

24. **The Receiver's Reports and Their Qualifications:**

    i. **Receiver's First Interim Report (Exhibit D2) (June 8, 2023):** This report, issued months before the Debtors' bankruptcy filing and discharge, detailed challenges in obtaining complete access to Glacia's records and explicitly stated "questions as to whether any patents are likely to be issued to Glacia, and whether the intellectual property is actually owned by Glacia." This demonstrates that even the Receiver's understanding of Glacia's assets was evolving and contained significant caveats.

    ii. **Receiver's Second Interim Report (Exhibit D4) (August 4, 2023):** This critical report, also issued months before the Debtors' discharge, contains the core allegations Roberts relies upon, including "unsubstantiated reimbursements" and IP transfer issues. However, it explicitly states, "I am not able to conclude whether these reimbursements were proper." (Page 12, Line 11) This is a clear failure to find impropriety, not a finding of fraud. The report further noted that records provided were "curated expressly for the purpose of my review" and that the Receiver "broadly do not believe the documents are complete."

    iii. **Roberts's Pre-Discharge Awareness of "Unsubstantiated Reimbursements":** Roberts's **Response to Motion to Remove Receiver (Exhibit D15)** explicitly confirms his awareness of these allegations from the Second Interim Report prior to the Debtors' discharge. Furthermore, during the *November 20, 2023 hearing*, Roberts's counsel directly articulated the Receiver's finding that "The Receiver has said that $300,000 was transferred out to Mr. Rominger." This irrefutably proves

11
DEBTORS' MOTION FOR DETERMINATION OF
STANDING AND THRESHOLD VALIDITY OF CLAIM
UNDER 11 U.S.C. §§ 727(D), 101(10), AND FRBP 7012(B)

Case 24-01085-CMA    Doc 119    Filed 07/08/25    Ent. 07/09/25 12:15:00    Pg. 11 of 15

Roberts's knowledge of this specific alleged "fraud" *prior to the Debtors' discharge*. (**Exhibit D16**, Page 19, Timestamp 14:27:51-14:27:55)

(11.20.23.roberts.vs.glacia_Verbatim Report.pdf, (**Exhibit D16**)

    iv. **Pivotal Report / Report of Audit Findings of Glacia, Inc. Dba Serakul (Exhibit D8) (September 30, 2024):** While filed post-discharge, this report, which Roberts relies upon, contains numerous disclaimers, including that "QBO historical data is useful as a reference point only and is not to be relied upon with certainty regarding its complete accuracy or transactional transparency" (Page 1, Third Paragraph) and that findings are "inexact figures due to missing data or receipt of partial data." (Page 19, Last Paragraph) (*QBO = Quickbooks Online*)

    v. **Actual Substantiation of Reimbursements:** Contrary to Roberts's assertions, the **Glacia_$303k Rec_ALL with Exhibits A thru M.pdf** (**Exhibit D9**) document, dated February 9, 2025, meticulously lists and provides supporting documentation for all $303,224.33 in reimbursements, including detailed receipts and credit card statements. This demonstrates that the reimbursements were, in fact, substantiated, and Roberts's continued assertion of "unsubstantiated" fraud is a misrepresentation.

    vi. **Most importantly from the Receiver's Third and Final Report (Exhibit D21**, Page 7, Lines 17-26) This report further confirms the Receiver's inability to definitively conclude fraud, stating "The only caveat I will offer to this conclusion is to note, as explained at length in the Second Interim Report, that I have not been able to fully assess whether Glacia has any valuable claims for fraudulent conveyance against Mr. Rominger or anyone else. As raised in the Second Interim Report, the company's QuickBooks reflects reimbursements to Mr. Rominger

12
DEBTORS' MOTION FOR DETERMINATION OF
STANDING AND THRESHOLD VALIDITY OF CLAIM
UNDER 11 U.S.C. §§ 727(D), 101(10), AND FRBP 7012(B)

Case 24-01085-CMA    Doc 119    Filed 07/08/25    Ent. 07/09/25 12:15:00    Pg. 12 of 15

totaling more than $300,000 since June of 2021; <u>determining whether any of these were fraudulent conveyances would likely require a forensic accounting of the company's transaction history, which would be a costly and time-consuming endeavor. Notably, however, even if the full amount of those reimbursements could be recovered from Mr. Rominger—an unlikely outcome—those claims would still not be sufficient to create solvency on Glacia's books.</u>

24. **Roberts's Post-Petition Acquisition of "Vague Claims":** The "vague claims" Roberts now asserts as the basis for his standing were not personally owned by him at the time the Debtors filed for bankruptcy. These claims were under the control of the Receiver. Roberts only acquired ownership of these specific claims after the purchase agreement was executed and the Receivership was terminated on **November 13, 2024**. This date is five months *after* the Debtors filed for bankruptcy and after their discharge was granted. (**Asset Purchase Agreement (Exhibit D11)**; **Order Terminating Receivership (Exhibit D18)**.

25. **Roberts's Personal Vendetta and Financial Interest:**
    i. Roberts directly funded the Receiver's operations. The **Order Expanding Receiver's Role to General Receiver (Exhibit D10), Page 10, Section 22**) explicitly obligated Roberts to pay receivership expenses. His **Response to Receiver's Motion to Approve Credit Bid (Exhibit D14)** details **$66,739.80** paid to the Receiver by Roberts.
    ii. During the November 20, 2023 hearing, Roberts explicitly stated his personal animosity: "Mr and Mrs. Rominger took the money, and that doesn't sit well

13
DEBTORS' MOTION FOR DETERMINATION OF
STANDING AND THRESHOLD VALIDITY OF CLAIM
UNDER 11 U.S.C. §§ 727(D), 101(10), AND FRBP 7012(B)

Case 24-01085-CMA    Doc 119    Filed 07/08/25    Ent. 07/09/25 12:15:00    Pg. 13 of 15

with me" and "I'm going to finish this... it is going to be free of Mr. Rominger." (**11.20.23.roberts.vs.glacia_Verbatim Report.pdf**, (**Exhibit D16**).

    iii. Roberts's acquisition of the "SeraKul" trademark in June 2024, after it lapsed, with the stated intention "to preclude Rominger from continuing to use them to dupe additional unsuspecting investors," further demonstrates his personal agenda. (**Roberts's Response to Motion to Remove Receiver**; (**Exhibit D15, Page 7, Lines 7-9**)

## IV. CONCLUSION

For the foregoing reasons, **Roberts's Complaint for Revocation of Discharge under 11 U.S.C. § 727(d)(1)** must be dismissed. Roberts cannot satisfy the statutory requirement that he "did not know of such fraud until after the granting of such discharge," as the record clearly demonstrates his pre-discharge knowledge or constructive knowledge of the alleged facts. Furthermore, Roberts lacks standing as a "creditor" under 11 U.S.C. § 101(10) with respect to the alleged claims, as he only acquired ownership of these claims months after the Debtors' bankruptcy filing and after their discharge. His continued prosecution of this action, fueled by clear personal animosity and documented through his own words and actions, represents an abuse of process.

WHEREFORE, Debtors Craig Clinton Rominger and Heidi Kay Rominger respectfully request that this Honorable Court enter an Order:

14

DEBTORS' MOTION FOR DETERMINATION OF
STANDING AND THRESHOLD VALIDITY OF CLAIM
UNDER 11 U.S.C. §§ 727(D), 101(10), AND FRBP 7012(B)

Case 24-01085-CMA    Doc 119    Filed 07/08/25    Ent. 07/09/25 12:15:00    Pg. 14 of 15

1. Determining that Jonathan Roberts lacks standing to pursue this adversary proceeding;

2. Dismissing Roberts's Complaint for Revocation of Discharge with prejudice; or

3. Alternatively, schedule an evidentiary hearing limited to the issue of standing and claim validity, and

4. Granting such other and further relief as this Court deems just and proper.

DATED this 8th day of July, 2025.

Respectfully submitted,

/s/ Craig C Rominger
Craig Rominger
Pro Se Litigant
7517 150th St SE
Snohomish, WA 98296
425-218-1838
craig.rominger@gmail.com

15

DEBTORS' MOTION FOR DETERMINATION OF
STANDING AND THRESHOLD VALIDITY OF CLAIM
UNDER 11 U.S.C. §§ 727(D), 101(10), AND FRBP 7012(B)

Case 24-01085-CMA    Doc 119    Filed 07/08/25    Ent. 07/09/25 12:15:00    Pg. 15 of 15