**FILED - WAWB**
**AUG 21 2025 9:32 PM**
**Gina Zadra Walton, Clerk of Court**

UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF
WASHINGTON AT SEATTLE

Before the Honorable Christopher M. Alston, United States Bankruptcy Judge.

| In RE: | CASE NO: 24-11790-CMA |
|---|---|
| Craig Clinton Rominger and Heidi Kay Rominger, Debtors | Adversary Case: 24-01085-CMA |
| Jonathan Roberts, an Individual. Plaintiff, | DEFENDANT'S TRIAL BRIEF |
| v. | |
| Craig Clinton Rominger and Heidi Kay Rominger, | |
| Defendants. | |

## I.      Introduction

This case arises from Plaintiff Roberts' attempt to revoke the Romingers' duly granted

Chapter 7 discharge by recasting speculative and incomplete receivership reports into

personal "claims" that never existed at the petition date. As demonstrated by his initial

1

DEFENDANT'S TRIAL BRIEF

filing to appoint a receiver (**Exhibit P1**), Roberts was the party who set in motion the very process that generated the documents he now relies upon.".

The Court should deny Plaintiff's motion to revoke discharge because (1) he lacked creditor status at the petition date, and (2) the alleged omissions were immaterial and made in good faith. Plaintiff Roberts attempts to transform speculative receivership reports into personal "claims" that never existed when the petition was filed. Revocation under 11 U.S.C. § 727(d) requires proof both of creditor standing under § 101(10) and of knowing, material fraud. Plaintiff fails on both elements.

At the petition date (July 18, 2024) (**Exhibit D8**), Roberts held no claim against the Debtors personally. His investments were in Glacia, Inc., not in Craig or Heidi Rominger. The only purported "claims" arose later, through tentative language in the Receiver's reports (**Exhibits D1** and **D2**) and a post-petition asset purchase agreement (**Exhibit D13**). The Ninth Circuit has made clear that post-petition assignments cannot retroactively create standing, and unsubstantiated "potential claims" do not qualify as a right to payment.

The evidence on which Plaintiff relies underscores this point. The Pivotal Audit Report (**Exhibit D15**) expressly disclaimed completeness and reliability; the Receiver herself stated that any fraud determination would require a forensic accounting never performed. A report that admits it cannot support conclusions cannot be weaponized as proof of fraud. Judge Larsen, presiding over the Receivership, reviewed these same reports and

2

DEFENDANT'S TRIAL BRIEF

denied a motion to compel further records, confirming no fraud finding existed (**Exhibit D10, D19**).

The alleged omissions in the Debtors' schedules were also immaterial, as evidence will show. Glacia stock had been extinguished in receivership and held no value. The confusion and lack of transparency in the asset sale is further demonstrated by the Declarations of Carlos Gil, Joel Ruhoff, Joe McIntosh and the Motion to Remove the Receiver, all of which show that interested parties were not properly notified and had to proactively request to be included in communications (**Exhibits D16, D17, D18, D20**). The Debtors nevertheless amended their schedules in September 2024 to disclose Glacia-related items as "disputed." The Chapter 7 Trustee, with full knowledge of those amendments, entered a discharge (**Exhibit D11**). Courts consistently hold that the omission of worthless assets does not constitute a fraudulent oath under § 727(a)(4).

The declaration of the Debtors' bankruptcy attorney, Richard Symmes, confirms that the schedules were amended and that the speculative claims had no value (**Exhibit D27, already on record).**

Evidence will show that there was ongoing confusion and miscommunication about the nature and existence of claims, as late as August 24, 2024 – over a month after the Romingers petition date. (**Exhibit D23, D26)**

The Romingers' reaffirmation of their Carvana loan illustrates diligence, not concealment (**Exhibit D24**).

3

The minor-owned LLC, Freestyle Entertainment, was defunct and worthless (**Exhibit D25**).

Post-receivership lawsuits were filed only after new personal claims arose, confirming they were never part of the bankruptcy estate. Finally, Roberts' lack of notice before discharge cannot cure his lack of standing. Without a valid pre-petition claim, no amount of procedural argument can create jurisdiction.

In sum, Plaintiff relies on conjecture and incomplete reports to manufacture standing and allege fraud where none exists. This was a no-asset case, properly discharged, later attacked by a disappointed business adversary. The Court should uphold the Debtors' discharge and reject Plaintiff's attempt to relitigate the Receivership through bankruptcy.

## II. Equitable Defenses Bar Plaintiff's Claim

Even if Plaintiff has standing, his action is barred by the equitable doctrines of laches, waiver, and estoppel.

**Laches** applies where a party unreasonably delays asserting rights to the prejudice of the debtor. Courts, including *In re Korte* (Bankr. W.D. Wash.), have applied laches to § 727(d) motions even when filed within the statutory time limit. Roberts waited more than six months after the Receiver announced the potential claims, and 62 days after purchasing Glacia's assets, before filing this action (**Exhibit D21**). That delay forced the

4

Debtors to incur new legal costs and disrupted the finality of their discharge—the precise harm laches is meant to prevent.

**Waiver** also applies. The receivership documents were public and equally available to Roberts. His decision to sit silent until after discharge demonstrates not diligence but retaliation. By failing to act on a known right in a timely manner, Roberts forfeited it.

Finally, **equitable estoppel** bars the claim. The Debtors reasonably relied on Plaintiff's silence and the Receiver's closure of the case as confirmation that no fraud action would follow. Allowing Roberts to revive those issues post-discharge would be manifestly unjust.

In sum, Roberts' delay was unreasonable, prejudicial, and inconsistent with the Bankruptcy Code's fresh-start policy. His claim is barred by laches, waiver, and estoppel, and we respectfully request that it be denied.

### III.  Defendant's Rebuttals of Plaintiff's Claims

*Defendant's Rebuttal to Plaintiff's Standing Under § 727(d)(1)*

#### A.    Plaintiff's Alleged "Claims" Were Never Established

Roberts relies on the Receiver's Second Interim Report and the Pivotal Audit Report to suggest fraudulent reimbursements. Yet both documents expressly disclaimed certainty. The Receiver stated she lacked sufficient evidence to allege fraud and that "further forensic accounting" would be required — which was never conducted. The Receiver's

5

First Interim Report (**Exhibit D1**) and Third & Final Report (**Exhibit D2**) contain the language that the claims were not substantiated, confirming that no 'claim' can be inferred." Judge Larsen, after nearly a year of oversight, denied Roberts' Motion to Compel additional records, confirming no finding of fraud was ever made **(Exhibit D19).** Where the supervising state court declined to pursue fraud, no "claim" can be inferred. See *In re Harker*, 357 F.3d 846, 849 (9th Cir. 2004) (only colorable claims confer creditor standing).

### B. Reliance on the Pivotal Report Is Misplaced

Plaintiff's standing argument hinges on the Pivotal Report, which was authored by an unlicensed individual without CPA or forensic credentials and expressly labeled incomplete **(Exhibit D6)**. The Receiver herself warned that conclusions would require further forensic work. Courts exclude such speculative material. See *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 590 (1993). Defendants have counter-evidence: reconciled accounting records **(Exhibit D9)** and testimony from Glacia's former contract CFO attesting to proper bookkeeping **(Exhibit D22)**

### C. No Cognizable Claim Existed at the Petition Date

At the July 18, 2024 filing date, Roberts held no enforceable right against the Romingers personally. His only evidence — the Pivotal Report — was unsigned, incomplete, and later disavowed by the Receiver. Speculative allegations are not "claims" under § 101(5). See *In re Cannon*, 741 F.3d 1139, 1144 (10th Cir. 2013) (mere hope of recovery does not suffice). Unlike creditors in *Korte* or *Sullivan*, Roberts had no judgment, note, or contract. Without a right to payment, he was not a creditor.

6

DEFENDANT'S TRIAL BRIEF

### D.     No Creditor Relationship With the Debtors

Roberts and other investors held convertible debt in Glacia, Inc. — a corporate

obligation, not a personal debt of the Romingers. Absent veil piercing or a personal

guarantee, corporate liabilities do not attach to shareholders. See *In re Extended Stay*

*Inc.*, 418 B.R. 49, 60 (Bankr. S.D.N.Y. 2009). Thus, omitting Roberts from Schedules

E/F was correct**.**

### E.     Post-Petition Asset Purchase Cannot Create Standing

Roberts' asset purchase in October 2024, **(Exhibit D13)** after the bankruptcy petition,

cannot retroactively manufacture standing. Under established assignment law, an

assignee steps into the shoes of the assignor and acquires only the rights the assignor

actually possessed. If the assignor—in this case, Glacia—had no valid claim against the

Romingers, then Roberts acquired no such claim. As one court has explained, the

assignee steps into the shoes of the assignor, and the rights of the assignee cannot be

better than those of the assignor.

### F.     Lack of Notice Does Not Cure Lack of Standing

Roberts' claim that he was prejudiced by lack of notice fails. Even if true, notice cannot

substitute for standing. Standing requires an enforceable right to payment at filing, not

procedural fairness. See *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339–40 (2016).

### G.     Plaintiff's Cases Are Distinguishable

- *Korte* involved a defined IRS tax debt, not speculative allegations.

- *Sullivan* assumed the existence of a valid claim; Roberts had none.

- *Adler* relied on prior state-court findings; no such findings exist here.

7

DEFENDANT'S TRIAL BRIEF

- *Morgan* involved creditors with documentation; Roberts has only an incomplete report.

These cases underscore the gap in Plaintiff's theory: he lacks a cognizable pre-petition claim.

**H.    Assignment Does Not Automatically Create a Claim**

Even if Roberts acquired Glacia's "rights," an assignee stands in the shoes of the assignor. *Sprint Commc'ns Co. v. APCC Servs.*, 554 U.S. 269, 285 (2008). Because the Receiver herself determined no claims existed, Roberts acquired nothing when he purchased the assets **(Exhibit D2)**.

**i.** Legislative History Does Not Eliminate Threshold Requirements

Plaintiff cites *McCarther-Morgan* and the legislative history (H.R. Rep. No. 95-595, S. Rep. No. 95-989) for the proposition that "claim" should be interpreted broadly. But those same sources recognize that the breadth applies to **actual obligations of the debtor** — not to imagined or unproven wrongs. Congress intended to capture contingent and unliquidated debts that could mature into enforceable rights, not to authorize litigation based on reports that openly disclaim their own reliability. See *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 557-58 (1990) (breadth of "claim" refers to scope of enforceable obligations).

**ii.** The Vahlsing Limitation Applies

Plaintiff's own footnote concedes that standing ends where a claim has been "conclusively disproved." See *In re Vahlsing*, 829 F.2d 565 (5th Cir. 1987). Here,

8

DEFENDANT'S TRIAL BRIEF

the Receivership Court's denial of Roberts' Motion to Compel and the Receiver's Third and Final Report **(Exhibit D2)** together function as that conclusive disproval: they show that no claim was ever validated or pursued, despite having the opportunity and authority to do so. The absence of any judicial finding or enforceable obligation is fatal.

## I.     Inconsistent Positions on Glacia Asset Value

Roberts previously argued in state court that Glacia was worthless, obtaining a Receivership on that basis **(Exhibit P1)**. He later acquired its assets for approximately $71,000. Now, he asserts those same assets yield substantial claims. The doctrine of judicial estoppel prevents litigants from taking inconsistent positions in successive proceedings. See *New Hampshire v. Maine*, 532 U.S. 742, 749–51 (2001).

## J.     Policy Concerns Against Manufactured Standing

Allowing speculative reports to create "creditor" rights would invite abuse, enabling parties to buy unsubstantiated allegations and weaponize them post-discharge. The Ninth Circuit cautions against such manipulation. See *In re Rainbow Magazine, Inc.*, 77 F.3d 278, 284 (9th Cir. 1996).

### *Conclusion: Mr. Roberts Standing Argument Fails on Multiple Fronts*

Roberts was not a creditor under § 101(10) at the petition date. He held no claim, only speculative allegations later packaged in a post-petition APA. Listing him as a "disputed" creditor was not an admission, and his cited cases assume claims that actually

9

existed. Because no valid, enforceable claim ever arose, Roberts lacks standing under § 727(d)(1), and his action must fail. The statute is clear, the Plaintiff steps into the shoes of Glacia. If, as we will prove, Glacia did not have a claim for fraud, neither does Roberts.

### *Rebuttal: Financial Sophistication Does Not Preclude Honest Mistakes*

Plaintiff equates business experience with bankruptcy expertise, but the two are not the same. The Romingers—though experienced in finance and accounting—had never filed personal bankruptcy. Bankruptcy law is highly specialized, requiring nuanced distinctions between contingent claims, dissolved corporate stock, and insider obligations. Such questions are legal, not intuitive, even for financial professionals.

The record reflects this lack of familiarity.

The Romingers relied heavily on counsel throughout, particularly regarding Glacia-related disclosures **(Exhibit D27)**. Courts consistently recognize that reliance on counsel negates fraudulent intent. *See In re Retz*, 606 F.3d 1189, 1199 (9th Cir. 2010) (fraudulent intent requires more than mistake or reliance on bad advice). Consulting counsel reflects transparency, not concealment.

References to unrelated LLCs (e.g., Savage Desserts, Freestyle Entertainment) are red herrings. Those ventures had no bearing on the bankruptcy estate and did not involve

10

undisclosed income or assets. Raising them here is an attempt to distract, not evidence of fraud.

Finally, because the Romingers completed their schedules under difficult personal circumstances—often separately, and with counsel's guidance—minor omissions were inadvertent, not calculated. The record shows debtors acting in good faith to navigate a complex process, not scheming to mislead.

The Romingers were not able to complete the bankruptcy form "together" with a proper review process, due to conditions at the time. As such, Mr. Rominger completed the bankruptcy form independently, relying on counsel when possible. This circumstance, far from suggesting deceit, underscores the Romingers' reliance on counsel and explains why inadvertent omissions may have occurred. The picture that emerges is not one of calculated fraud but of debtors doing their best, under difficult personal circumstances, to navigate a complex legal process.

### *Rebuttal to Plaintiff's Assertion that Omission of the "Roberts Protection Order Action" was Material and Wrongly Omitted*

Plaintiff's reference to the "Roberts Protection Order Action" is yet another distraction. A protection order is a civil remedy designed to prevent harassment, not an instrument for monetary payment. It does not create a debt or an enforceable claim to payment, and therefore it is not a "claim" that needs to be disclosed on bankruptcy schedules under § 101(5). The Debtors had no obligation to list this action, as it had no bearing on the

11

financial administration of the estate. Plaintiff's inclusion of this non-financial action is a clear attempt to muddy the waters and imply a history of wrongdoing where none exists.

### *Rebuttal: The Glacia Stock and Positions Omission Was Neither Knowing Nor Material*

By the petition date (July 18, 2024), Glacia, Inc. had been dissolved through receivership. Its assets were sold via credit bid, its equity extinguished, and its stock rendered worthless. As of the May 27, 2022 board meeting minutes, the company was already experiencing severe financial and operational issues (**Exhibit D7**), which directly contributed to its eventual dissolution in receivership. Courts consistently hold that omission of extinguished stock is immaterial under § 727(a)(4). *See In re Wills*, 243 B.R. 58, 63 (9th Cir. BAP 1999) ("Materiality requires that the false oath bear a relationship to the debtor's business transactions or estate … and impact the administration of the case"). Where disclosure would not affect estate distribution, it is not material.

The omission was not knowing. After consultation with counsel, the Romingers reasonably understood "stock ownership" to mean stock with present value. Believing Glacia's stock extinguished, they did not list it. When questions later arose, they promptly amended their schedules in September 2024 to include Glacia-related matters as disputed. Courts routinely hold that timely amendments reflect good faith. *See In re Khalil*, 379 B.R. 163, 174 (9th Cir. BAP 2007) (failure to amend may show intent; conversely, prompt amendment shows transparency).

12

The Chapter 7 Trustee reviewed the amendments and still granted discharge. This fact is dispositive: if the neutral fiduciary, with full disclosure, determined the omission did not bar discharge, the Court should reject Plaintiff's attempt to relitigate that judgment.

In short, a § 727(a)(4) false oath must be both knowing and material. Here, the Glacia omission was neither. It was not knowing, because the Romingers reasonably believed the stock to be worthless; and it was not material, because disclosure would not have altered creditor recovery. Plaintiff's theory fails at both prongs.

### *Rebuttal to Plaintiffs Claims of Fraud and Materiality*

**1. Extinguished Assets Are Not Material**

The Bankruptcy Code requires disclosure of assets that matter to the estate—those with potential value for creditors. Courts have long held that omissions are "material" only if they bear on distribution or the debtor's financial condition. *In re Wills*, 243 B.R. 58, 62–63 (9th Cir. BAP 1999). Assets that are worthless or extinguished are, by definition, immaterial.

Glacia, Inc. was dissolved before the petition date; its assets sold at receivership; its equity extinguished. Any stock the Romingers once held had no value—economic or distributive. Courts recognize that omission of stock in a defunct company is not a false oath under § 727(a)(4) because disclosure would not change the outcome for creditors. *See id.* The Romingers' belief that Glacia stock was worthless was reasonable, and their subsequent amendment further confirms good faith.

13

### 2. Revocation Requires Fraud That Affected Discharge

Revocation under § 727(d)(1) requires more than an error—it requires fraud that, if known, would have led to denial of discharge. *In re Retz*, 606 F.3d 1189, 1197 (9th Cir. 2010); *In re Gilliam*, 478 B.R. 497, 504 (9th Cir. BAP 2012). The standard is high because revocation is an extraordinary remedy.

Here, even if the Glacia omission were treated as an error, it was immaterial, as confirmed by Receiver Scalia in the Third and Final Report. The Trustee—the estate's fiduciary—reviewed the amended schedules and still issued discharge. That independent judgment confirms the omission had no bearing on the case outcome, and revocation cannot be justified.

### 3. Bankruptcy Policy: Fresh Start and Narrow Fraud Exceptions

Bankruptcy favors a fresh start for honest debtors, and fraud exceptions are construed narrowly. *Grogan v. Garner*, 498 U.S. 279, 286–87 (1991). Expanding "fraud" to include immaterial or speculative omissions would frustrate that policy. The Ninth Circuit BAP has cautioned against broadening fraud liability beyond clear wrongdoing, warning that such expansion undermines the Code's purpose. *See In re Khalil*, 379 B.R. 163, 173–74 (9th Cir. BAP 2007).

Plaintiff's theory would turn speculative receivership disputes into prepetition "claims" and penalize the Debtors for not listing extinguished stock. That is not what § 727 was designed to address.

14

### *Rebuttal to Plaintiff's Claims of Alleged Omission of Prepetition*
### *Claims Against Third Parties*

**A. Claims in the Receivership Context**

During the Receivership, Mr. Rominger acted solely for Glacia, Inc.—not himself. Any claims submitted were corporate in nature, subject to the Receiver's discretion, and ultimately rejected or disregarded. They never became enforceable personal rights. Courts hold that failure to list speculative or indeterminate interests does not constitute fraud. *Khalil*, 379 B.R. at 174.

**B. Absence of Personal Claims Prepetition**

At the petition date, Mr. Rominger had no personal claims against Backous, Goodwin, Grether, Dowdell, or Roberts. His role was limited to representing Glacia in the Receivership. These were not personal causes of action and therefore not schedulable assets.

**C. Post-Receivership Claims**

Only after the Receivership ended—and the same individuals used its documents in new attacks—did Mr. Rominger pursue personal claims. These were timely filed under statute of limitations and arose post-petition. By definition, they were not estate property at filing and could not have been scheduled.

**D. Legal Consequence**

Plaintiff's attempt to recast these later-filed lawsuits as evidence of fraudulent nondisclosure fails for several reasons:

15

1. **Temporal Fact –** The claims did not exist as personal, enforceable causes of action at the petition date.

2. **Legal Capacity –** In the Receivership, Mr. Rominger acted for Glacia, not himself.

3. **Due Process –** The post-Receivership lawsuits are an exercise of constitutional rights in response to new, direct attacks.

4. **No Prejudice –** no-asset case. **(Exhibit D8, D12)** No creditor was deprived of recovery because of these omissions.

Taken together, these facts eliminate any inference of fraudulent intent. At worst, the omission reflects the inherent ambiguity between corporate representation and personal ownership during and after a Receivership. That ambiguity is insufficient to sustain Plaintiff's heavy burden under §727(d).

The Plaintiff may attempt to argue that the Debtors' amendments are proof that their original filings were false. In fact, the opposite is true. Fraudulent debtors do not voluntarily amend schedules to correct immaterial or misunderstood entries—they exploit omissions. Here, the Debtors' amendments are evidence of candor, consistent with the Bankruptcy Code's structure that permits and encourages amendments. The Court should treat these corrections as proof of transparency, not concealment.

16

## IV. Defendant's Arguments Supporting Discharge

### 1. Debtors Exercised Good Faith Judgment

Neither Mr. nor Mrs. Rominger had prior bankruptcy experience. They are business professionals, but bankruptcy law is a niche area where even sophisticated individuals often depend heavily on counsel. Completing bankruptcy schedules is comparable to navigating complex tax law: intelligence in one field does not guarantee comprehension of another.

Mr. Rominger exercised his best judgment with the information he had and consulted counsel throughout. His reliance on counsel in amending the schedules further evidences good faith, not fraud.

### 2. There Was No Intent to Conceal Assets

The omissions were not intentional concealments designed to hide value from the Trustee. Had the Debtors not amended, they would have received no financial benefit — the shares and company were worthless. Fraudulent intent cannot be inferred from omissions that confer no advantage.

It may be tempting to suggest that any stock—even in a dissolved, defunct corporation—should be disclosed. But under §727, the inquiry is materiality, not formalism. The Glacia stock had no value, no transferability, and no conceivable benefit to creditors. At the time of filing, the Debtors' omission was a good faith interpretation, made with counsel, that worthless stock was immaterial. To remove any doubt, the Debtors later

17

amended their schedules—an act of candor that underscores good faith rather than concealment.

### 3. Plaintiff Lacks Standing Under 11 U.S.C. § 727(d)

Before addressing the merits, this Court must first resolve the threshold question of standing. Plaintiff Roberts bears the burden of proving that he was a "creditor" at the time of the petition, as required by § 101(10). He cannot meet this burden for multiple reasons:

A. <u>No Claim exists, at most any claim is immaterial</u>. (See below, "The Alleged Omissions Were Not Material as a Matter of Law")

B. <u>No Personal Claim Against the Romingers</u>. All alleged loans and investments were made to Glacia, Inc., through convertible notes. No evidence exists of any personal guarantee by Mr. or Mrs. Rominger. Corporate obligations cannot be retroactively transformed into personal debts.

C. <u>Post-Petition Asset Purchase Cannot Automatically Confer Standing</u>. Roberts' alleged acquisition of claims via the Receivership sale occurred after the petition date. Standing under § 727(d) must exist at the time of filing and cannot be manufactured later. (*See In re Boyajian*, 564 F.3d 1088 (9th Cir. 2009)).

D. <u>Speculative Reports Are Not Claims</u>. Reliance on the Pivotal Audit Report — which itself expressly admitted it was incomplete and required further forensic accounting — cannot establish a valid creditor relationship. Potential or contingent claims do not satisfy the Bankruptcy Code's definition of a claim absent enforceable legal rights.

18

DEFENDANT'S TRIAL BRIEF

E. <u>Failure to File a Proof of Claim</u>. Although not a requirement, no proof of claim was ever filed by Roberts or others during the pendency of the bankruptcy. The first time Roberts articulated a personal "claim" was in a complaint filed months after discharge **(Exhibit D21)**.

F. <u>Receiver's Role Was Corporate, Not Personal</u>. During the Receivership, any rights to pursue corporate causes of action belonged exclusively to the Receiver. Roberts cannot bootstrap that fiduciary role into a personal right of action.

G. <u>Lack of Notice Does Not Cure Standing</u>. Even if Roberts lacked notice of the discharge, this procedural defect cannot transform him into a creditor where no personal claim existed. (*Spokeo, supra*)

For these reasons, Plaintiff fails the most basic requirement of § 727(d), and the case should be dismissed on standing grounds alone.

**4. The Alleged Omissions Were Not Material as a Matter of Law**

**Fact – The Receiver Rejected Materiality in her Third and Final Report.**

Plaintiff's case rises and falls on materiality. Yet the Superior Court–appointed Receiver, the only neutral fiduciary to review Glacia's books, expressly declined to find fraud or material claims. In her final report, she stated:

"I have not been able to fully assess whether Glacia has any valuable claims for fraudulent conveyance against Mr. Rominger or anyone else. … Even if the full amount of those reimbursements could be recovered—an unlikely outcome—those claims would

19

still not be sufficient to create solvency on Glacia's books." **(Exhibit D2, p. 7, lns. 17–26.)**

Two points are dispositive: (1) fraud was never established, and (2) even assuming recovery, the estate would remain insolvent. If the Receiver herself could not conclude fraud and confirmed solvency would not change, Plaintiff cannot meet the burden of proving materiality.

A report—especially one that is expressly preliminary, incomplete, and inconclusive—does not itself assert a right to payment. At most, it hints that future claims might exist. That is insufficient to constitute either a proof of claim or an "informal" claim under Ninth Circuit law. See Holm, 931 F.2d at 622 (informal-claim doctrine requires an assertion of liability, not reportage); Barker, 839 F.3d at 1197–98. The Receiver herself acknowledged that "as explained at length in the Second Interim Report, that I have not been able to fully assess whether Glacia has any valuable claims for fraudulent conveyance against Mr. Rominger or anyone else."

**Issues of Law**

Materiality under § 727(d)(1) requires an omission that bears on estate administration or the discovery of assets. *In re Wills*, 243 B.R. 58, 63 (9th Cir. BAP 1999). Trivial, contingent, or speculative matters are not material. *In re Khalil*, 379 B.R. 163, 173 (9th Cir. BAP 2007). The Ninth Circuit agrees: only omissions that mislead the trustee or conceal assets affecting the estate qualify. *In re Retz*, 606 F.3d 1189, 1198 (9th Cir.

20

2010). Other circuits concur. *See In re Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992) (speculative interests immaterial); *In re Cannon*, 741 F.3d 1139, 1144 (10th Cir. 2013) (must involve a "legally protected interest").

**Application.**

Here, none of the alleged omissions were material:

- **No hidden assets.** The Trustee knew of the Receivership and identified no assets to administer.

- **No prejudice.** The Pivotal Report and Glacia disputes reflected only speculative, unresolved matters.

- **No distributable value.** Glacia stock was extinguished by Receivership and worthless on the petition date. Courts uniformly hold omission of valueless stock is immaterial. *Wills*, 243 B.R. at 62.

Because no estate asset was concealed, no creditor misled, and no administration impaired, the omissions fail the materiality test as a matter of law.

### 5.   The Decision to Amend and Notice Glacia-Related Items Was Counsel-Directed

On September 5, 2024, Mr. Rominger consulted attorney Joe McIntosh, who advised that Glacia's corporate debts were not personal obligations of the Romingers. Out of caution, Mr. Rominger also sought a second opinion from bankruptcy attorney Richard Symmes. Symmes confirmed the same legal principle but recommended amending the schedules to reflect "potential" Glacia-related claims as disputed.

21

DEFENDANT'S TRIAL BRIEF

Acting on this advice, Attorney Symmes filed amended Schedules E/F on September 8, 2024. The choice not to issue additional notices was made jointly by counsel and client, based on the no-asset nature of the case. That was a legal strategy—not concealment. Rominger reasonably relied on professional guidance throughout.

Plaintiff may argue that amending schedules proves the original filings were false. The opposite is true. Fraudulent debtors exploit omissions; honest debtors correct them. The Bankruptcy Code anticipates and permits amendments precisely so debtors can clarify immaterial or uncertain items. Here, the Romingers' prompt amendment is evidence of candor, not deceit.

Courts consistently recognize that reliance on counsel negates fraudulent intent where the debtor makes full disclosure. *In re Adeeb*, 787 F.2d 1339, 1343 (9th Cir. 1986). The record shows that Mr. Rominger sought legal advice, disclosed the facts, and followed counsel's direction in good faith. This Court should view the amendments as proof of transparency, not fraud.

## 6. Amending Schedule E/F to add disputed, contingent entries is not an admission that any claim exists.

Plaintiff contends that because Defendants later amended Schedule E/F to list him and certain investors—as **disputed** "potential claimants"—they somehow "acknowledged" liability. The Ninth Circuit has squarely rejected that move: a debtor's schedules are not an admission establishing a claim, nor do they create an informal proof of claim for a creditor. *Barker*, 839 F.3d at 1197–98 (listing on schedules is **"neither a formal proof**

22

**of claim nor an informal proof of claim").** Persuasive authority agrees that scheduling a claim is not a concession of validity. See *In re Ben Franklin Hotel Assocs.*, 186 F.3d 301, 305 (3d Cir. 1999).

### 7. Plaintiff's Aggressive Litigation Is Not Proof of Fraud

Finally, the Plaintiff's attempt to characterize these events as intentional concealment ignores the reality: this was a no-asset case, overseen by a Chapter 7 Trustee who reviewed the amendments and nevertheless granted discharge. It was only later — through Roberts' aggressive post-discharge litigation — that these issues were repackaged as supposed fraud. That is not the standard of § 727(d).

### 8. September 3, 2024 Motion is Not a Foundation for Standing

Plaintiff contends that his September 3, 2024 motion in the Receivership—seeking court approval to allow bidders access to the Pivotal Report—combined with Defendants' amendment of Schedule E/F five days later, somehow constitutes proof of a "claim" prior to discharge. This reasoning collapses under its own weight. A request to release a report is not, as a matter of law, the equivalent of filing or asserting a claim.

**The Legal Standard**

A. **Formal proof of claim.** In bankruptcy, a claim is asserted by filing a proof of claim that substantially complies with Rule 3001 and Official Form 410. Merely appearing in related litigation or being named on schedules is not enough. *See In re Barker*, 839 F.3d 1189, 1197–98 (9th Cir. 2016) (listing in a debtor's

23

schedules is *not* a proof of claim and does *not* create an "informal" claim; creditor must take affirmative action to assert the claim).

B. **Informal proof of claim (Ninth Circuit).** A writing may qualify *only* if it (i) is filed in the bankruptcy case (or otherwise made part of the bankruptcy record), (ii) states the nature and amount of the debt, and (iii) evidences the creditor's intent to hold the estate liable. In re Sambo's Restaurants, Inc., 754 F.2d 811, 816–17 (9th Cir. 1985) (intent and demand are essential); In re Pizza of Hawaii, Inc., 761 F.2d 1374, 1377 (9th Cir. 1985) (same); In re Holm**,** 931 F.2d 620, 622 (9th Cir. 1991) (reaffirming requirement of "explicit demand showing the nature and amount of the claim and evidencing intent to hold the debtor liable"). The Ninth Circuit in Barker distilled these elements and rejected attempts to stretch the doctrine where the writing does not plainly demand payment from the Debtor or bankruptcy estate. 839 F.3d at 1197–98.

C. **Colorable right to payment.** Even apart from the proof-of-claim framework, a party invoking bankruptcy remedies must show at least a colorable right to payment—not speculation. See In re Veal, 450 B.R. 897, 913–15 (9th Cir. BAP 2011) (party must demonstrate a colorable claim to relief to have standing in bankruptcy litigation). And federal standing requires a concrete, non-speculative injury. Spokeo, Inc. v. Robins**,** 578 U.S. 330, 339–41 (2016).

9. **Plaintiff's September 3 receivership motion is not a "claim" and does not qualify as an informal proof of claim.**

24

The filing Plaintiff relies on did not demand payment, state an amount due, or declare an intent to hold either Defendant personally liable. It merely asked the state court to facilitate access to the in-progress Pivotal Report for prospective bidders. That kind of administrative or discovery-adjacent request is miles away from the Ninth Circuit's test for an informal proof of claim, which requires a writing that "explicitly demand[s] payment" and manifests an intent to hold the debtor or estate liable. *Sambo's*, 754 F.2d at 816–17; *Pizza of Hawaii*, 761 F.2d at 1377; Barker, 839 F.3d at 1197–98.

The Plaintiff's motion was not filed *in the bankruptcy case*. The Ninth Circuit's rule is bankruptcy-centric: the writing must put the bankruptcy court and the trustee on notice of a right to payment from the bankruptcy estate. *Barker*, 839 F.3d at 1197–98. A state-court motion asking to circulate a report does neither.

### 10. Plaintiff still must show a colorable right to payment; speculative, to-be-developed allegations won't do.

Section 727(d)(1) allows a *creditor* to seek revocation. That status presupposes at least a colorable claim to payment. *Veal*, 450 B.R. at 913–15 (standing in bankruptcy requires colorable claim). A preliminary, caveated report plus a state-court motion about circulation of that report is not a colorable right to payment. It is—by its own terms—contingent on further forensic work that was never done. Under *Spokeo*, a purely speculative or hypothetical injury cannot support standing. 578 U.S. at 339–41.

25

## V. Conclusion

Defendants respectfully submit that Plaintiff has not met his burden under 11 U.S.C. § 727(d)(1). The cases he cites (*Korte, Sullivan, Adler, Morgan*) all involved creditors with enforceable, pre-petition claims such as judgments or notes. By contrast, Roberts never held such a claim. His argument rests only on the speculative Pivotal Report, which expressly disclaimed findings, and on receivership proceedings where both the Receiver and Judge Larsen declined to make any fraud determination.

Speculation is not a claim. Bankruptcy law requires a "colorable right to payment," not conjecture. *In re Cannon*, 741 F.3d 1139, 1144 (10th Cir. 2013); *In re Veal*, 450 B.R. 897, 906 (9th Cir. BAP 2011). Because Roberts lacked a valid claim at the petition date, he lacked standing to pursue revocation.

Even if standing were assumed, Plaintiff cannot show knowing and material fraud. The Debtors amended their schedules promptly, disclosed Glacia-related items as disputed, and relied on bankruptcy counsel throughout. The Trustee, with full knowledge of those amendments, granted discharge. Courts in this Circuit have emphasized that revocation is an extraordinary remedy, reserved only for clear cases of intentional dishonesty. *In re Retz*, 606 F.3d 1189, 1196–99 (9th Cir. 2010). No such proof exists here.

The Bankruptcy Code balances accountability with the fresh-start policy. To revoke discharge requires more than suspicion or an incomplete report—it requires actual proof of fraud and standing, neither of which Roberts has provided.

26

Accordingly, Defendants respectfully request that the Court deny Plaintiff's motion to revoke discharge and uphold the discharge duly entered in this case.

Dated this 21st day of August, 2025.

Respectfully submitted,


/s/ Craig C Rominger
Craig Rominger
Pro Se Litigant
7517 150th St SE
Snohomish, WA 98296
425-218-1838
craig.rominger@gmail.com

27

DEFENDANT'S TRIAL BRIEF